Audie Lynn FOX, Appellant,

v.

STATE of Minnesota, Respondent.

No. C8–90–2676.

Supreme Court of Minnesota.

Oct. 4, 1991.

Audie Fox, pro se.

John Stuart, Minnesota Public Defender, Susan Andrews, Asst. State Public Defender for Conflicts, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sheila Kerwin, Assts. Atty. Gen., St. Paul, John J. Muhar, Itasca County Atty., Grand Rapids, for respondent.

YETKA, Justice.

Audie Fox appeals from an order of the Itasca County District Court denying post-conviction relief under Minn.Stat. § 590.04 (1990). Appellant claims that he was unable to participate in his defense during his 1982 first-degree murder trial because of the effects of chlorpromazine (Thorazine), an antipsychotic drug administered to appellant before and during the trial to relieve appellant's anxiety, hypertension, and auditory hallucinations. We affirm the district court.

An Itasca County grand jury indicted appellant on two counts of first-degree murder[1] in the shooting death of Itasca County Deputy Sheriff Robert R. Lawson. At appellant's arraignment on the indictment, the trial court ordered a mental status examination pursuant to Rule 20 of the Minnesota Rules of Criminal Procedure. After an examination at the Minnesota Security Hospital in St. Peter, appellant was found competent to stand trial.

Appellant entered pleas of not guilty and not guilty by reason of mental illness. Following a change of venue to Crow Wing County, appellant was tried and found guilty of one count of first-degree murder (intentional killing of a peace officer en-

gaged in the performance of official duties) and was sentenced to life imprisonment. On direct appeal to this court, appellant contended that the trial court erred (1) in not instructing the jury that, under the peace officer statute, the state must prove that the defendant knew that the victim was a "peace officer" and (2) in not submitting to the jury, as a lesser offense, a third-degree murder instruction under Minn.Stat. § 609.195 (1982). This court affirmed the conviction. *See State v. Fox*, 340 N.W.2d 332 (Minn.1983).

Appellant filed a pro se petition for post-conviction relief in January 1990, 8 years after his conviction. In his petition, appellant sought a new trial and review of the following issues:

1. Whether appellant was denied effective assistance of counsel because his privately retained attorney had no criminal trial experience;

2. Whether appellant's trial counsel was incompetent because he failed to object to certain jury instructions;

3. Whether appellant was unable to participate in his defense because of medication he had been receiving before and during the trial;

4. Whether appellant was denied a fair trial because his trial attorney denied him the right to testify in his own behalf;

5. Whether appellant was denied a fair trial because the state coerced appellant's aunt to testify against him by threatening her with prosecution for aiding in the commission of the crime, knowing that appellant's aunt was allegedly "mentally ill or retarted" [sic]; and

6. Whether the evidence was sufficient to support the jury's guilty verdict for intentional murder of a peace officer.

The post-conviction proceeding took place at the Minnesota Correctional Facility in Stillwater on September 20, 1990. The evidence at the hearing focused primarily on appellant's claim that he was prevented from participating fully in his defense be-

1. Minn.Stat. §§ 609.185(1), (4) (1982).

cause of the effects of Thorazine. Appellant and his mother testified on his behalf; the state presented an expert witness who testified to the effects of antipsychotic drugs.

The post-conviction court denied appellant's request for a new trial on all the asserted grounds. This appeal followed and is limited to the issue of whether appellant is entitled to a new trial since he was allegedly unable to participate in his own defense because of the effects of Thorazine. In addition, the appellant filed a pro se supplemental brief in which he asserts ineffective assistance of trial counsel and additional facts supporting his request for a new trial.

A complete recitation of the facts underlying appellant's conviction is unnecessary for this appeal. This court's opinion in the direct appeal adequately summarizes the events leading to appellant's arrest.

Appellant was represented by private counsel at the post-conviction hearing. Although counsel raised all the issues in appellant's pro se petition, counsel emphasized and the testimony focused on appellant's alleged inability to participate in his defense because of the effects of Thorazine. Appellant did not present any expert testimony on the effects of Thorazine. Appellant's motion to submit expert affidavits after the hearing was denied.

Appellant's mother, Jeanette Fox, testified first as to appellant's condition at trial. She visited appellant "several times" after his arrest and "on weekends" during his trial. Mrs. Fox testified that she often had trouble communicating with appellant. Appellant's voice was "very slurred," and appellant sounded as if he had a "real thick tongue." On some occasions, she alleges, appellant was unable to recognize her when she visited him.

Appellant testified to the amount and effects of the medications he was receiving prior to and during trial. When appellant was sent to the Minnesota Security Hospital at St. Peter in early December 1981, he was given 200 milligrams of Thorazine four times a day. This was the highest dose appellant received at any time after his arrest. Appellant testified that he was unable to stay awake and his hands would shake at that dosage (800 milligrams/day). He also complained that his tongue felt "dry * * * and thick."

Because of these side effects, appellant's Thorazine treatment was reduced from 800 milligrams/day to 600 milligrams/day shortly after his arrival in St. Peter. Beginning in January 1982 and at the time of his discharge on March 25, 1982, appellant was receiving 100 milligrams of Thorazine daily. Appellant continued to receive the 100-milligram dose at bedtime throughout the trial dates of April 20–26, 1982.

Appellant testified that he felt like a "zombie" during the trial; he said that he saw people talking, but could not understand or hear what was being said. He complained of being numb, unable to do anything without direction but sleep, and claims that he could not remember "much of anything" from the trial because of his medication. Finally, appellant testified that he was able to answer questions at the post-conviction hearing because he had been "off" Thorazine since 1986.

On cross-examination, appellant conceded that he had agreed with counsel that he should not testify at trial. Appellant insisted that he did not actually make the decision, but simply "agreed with whatever was going on at the time." Appellant also refused to acknowledge that he had been satisfied with his trial counsel's services at the time of trial.[2] He claimed that any evaluation of counsel's services at trial was

2. At the sentencing hearing on May 3, 1982, where appellant pleaded guilty to attempted assault in the first degree on his wife, Pam Fox, the following exchange took place concerning appellant's trial counsel, Richard Hansen:

The Court: Are you satisfied with the services Mr. Hansen rendered in your behalf in this case * * *?

Defendant: Yes.
The Court: Did he do a good job for you?
Defendant: Yes.
The Court: That you expected him to?
Defendant: Yes.
The Court: Any complaints about Mr. Hansen's services?
Defendant: No.

tainted by appellant's medicated state during the trial.

The state presented the expert testimony of Dr. Eduardo Colón, a psychiatrist at the University of Minnesota. Dr. Colón had reviewed the records of the medications administered to appellant at the Minnesota Security Hospital and the Crow Wing County jail. He was asked specifically to testify concerning the medications appellant was receiving the week before and during the trial.

Dr. Colón testified that chlorpromazine, of which Thorazine is a brand name, is an antipsychotic drug or major tranquilizer. According to Dr. Colón, appellant's dose of Thorazine at the time of trial was "a fairly small dose." He stated that Thorazine generally can cause some drowsiness and may have an impact on psychotic symptoms. However, where a person has been taking the drug for a significant amount of time, "the sedation usually goes away and/or doesn't occur as much" with a 100-milligram dose.

Dr. Colón opined that the dose of Thorazine appellant was receiving from April 20–26, 1982, would have a minimal effect in terms of sedation or on his ability to consult or help his attorney in his trial. Dr. Colón based his opinion on appellant's tolerance level after having been on the 100-milligram dose for at least 2 months and his having had a much higher dosage before that. However, Dr. Colón pointed out that he was not aware of appellant's mental status at the time of trial. In addition, he testified that some people are affected more strongly by drugs than others.

On cross-examination, Dr. Colón testified to the process by which drugs such as Thorazine "wear off" or are released from the body. He explained that the half-life of Thorazine is anywhere from 10 to 40 hours. This means that if medication is stopped at a given moment, the effects of that drug can continue for several days, depending on the amount and duration of administration. These lingering effects also are possible when a person goes from a higher dosage to a lower dosage. However, in assessing one's ability to assist with the defense of a murder case, Dr. Colón indicated that whether a person was "oversedated" necessarily would be considered in performing a psychiatric evaluation of competency.

Finally, appellant asserts in his pro se supplemental brief that he should have been allowed to testify at his trial because he was the only one who could "explain what I was going through at the time the murder occurred." He argues that he was unable to participate in the decision not to testify at trial because of his medication. He also claims that he was denied effective assistance of counsel because his trial attorney had no criminal trial experience.

■ The scope of this court's review of a post-conviction hearing is limited to the question of whether there is sufficient evidence to sustain the post-conviction court's findings. *Barness v. State*, 290 Minn. 509, 510, 187 N.W.2d 111, 112 (1971). This court will not disturb the post-conviction court's decision to grant or deny a new trial unless there is an abuse of discretion. *Wieland v. State*, 457 N.W.2d 712, 714 (Minn.1990) (citing *Berry v. State*, 364 N.W.2d 795, 796 (Minn.1985)).

■ In a criminal case where there has already been a direct appeal, matters raised therein and all claims known, but not raised at that time will not be considered in a subsequent petition for post-conviction relief. *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn.1990); *State v. Knaffla*, 309 Minn. 246, 251–52, 243 N.W.2d 737, 740–41 (1976) (post-conviction relief allowed regarding known matter where there had been no direct appeal). Only where a claim is so novel that it can be said that its legal basis was not reasonably available at the time direct appeal was taken and decided will post-conviction relief be allowed. *Case v. State*, 364 N.W.2d 797, 800 (Minn.1985).

The petitioner in *Case* contended that the public defender had refused to include, on his direct appeal, the issues raised in the post-conviction proceeding. Thus, the claims were clearly known, but not raised on direct appeal. On this basis, the court of appeals did not address the petitioner's claims on the merits. *Id.* at 799. A majori-

ty of this court affirmed the court of appeals' reasoning, but reviewed the case on the merits because the petitioner was not given the opportunity to submit a pro se supplemental brief. *Id.* at 800. Similarly, the record in *Fratzke* revealed that the petitioner and his appellate counsel had considered challenging trial counsel's performance in the direct appeal and chose not to do so, thus precluding review on the merits. 450 N.W.2d at 102.

■ However, even if a petitioner knows of an issue at the time of the direct appeal, fairness requires that the claim be considered unless the petitioner "deliberately and inexcusably" fails to raise the issue on direct appeal. *See Case,* 364 N.W.2d at 801 (Wahl, J., concurring specially). This extra requirement allows substantive review of a petitioner's claims whose legal basis may have been either "known" or "reasonably available" at the time of direct appeal. We conclude that substantive review is warranted in this case.

■ Here, appellant was adjudicated competent to stand trial on March 8, 1982, after a mental status evaluation at the Minnesota Security Hospital in St. Peter. Appellant offered evidence alleging that the effects of Thorazine rendered him incompetent to participate in his defense at trial. Appellant, in seeking a new trial in his post-conviction proceeding, had the burden of proving, by a fair preponderance, facts which would warrant the reopening of the case. Minn.Stat. § 590.04, subd. 3 (1990); *Wieland,* 457 N.W.2d at 714; *State v. Blasus,* 445 N.W.2d 535, 542 (Minn.1989). The decision to grant a new trial lies in the discretion of the trial court and will not be disturbed unless there is an abuse of discretion. *Blasus,* 445 N.W.2d at 542–43.

The post-conviction court could have reasonably found that appellant did not sustain his burden of proving his incompetence at trial by the fair-preponderance standard. In Minnesota, a defendant

> shall not be permitted to * * * be tried or sentenced for any offense if the defendant: (1) lacks sufficient ability to consult with a reasonable degree of rational

understanding with defense counsel; or (2) is mentally ill or mentally deficient so as to be incapable of understanding the proceedings or participating in the defense.

Minn.R.Crim.P. 20.01, subd. 1 (1990); *see also Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."); *see also State v. Bauer,* 310 Minn. 103, 245 N.W.2d 848 (1976) (examining the adequacy of procedures used to ensure competency at trial).

Although this court has not decided the precise issue of the effect of antipsychotic drugs on a criminal defendant's competency to stand trial, we addressed a similar claim in *DeGidio v. State,* 289 N.W.2d 135 (Minn.1980). There, the petitioner contended at his post-conviction hearing that he was incompetent to assist in his own defense at the time of trial because he was taking methadone as part of a heroin detoxification program and the methadone made him drowsy. *Id.* at 136. The record indicated that the court, not knowing of the petitioner's medication at trial, observed the petitioner "doze off" on one occasion and warned petitioner's counsel that petitioner should get his sleep so he would be alert during trial. *Id.*

The petitioner maintained that the incidents continued; however, the post-conviction judge, who also presided at trial, did not observe petitioner doze off again during trial. The court stated its recollection, corroborated by petitioner's trial counsel, that petitioner actively participated in the trial by whispering to his attorney and making gestures. Under all the circumstances, this court held that the petitioner had failed to establish that he was incompetent at the time of trial. *Id.*

Here, appellant's assertion that he was unable to assist in his defense at the time of trial was not supported independently by any unusual events or activities at trial.

There is no evidence in the record that appellant "dozed off" or was otherwise unable to participate in his defense. Appellant's mother's testimony only partially substantiated his claims; her encounters with and observations of appellant occurred outside the trial and the courtroom.

Nor was there corroboration of appellant's testimony that he was "unable to do anything" without direction. Appellant provided no testimony from other participants in the trial, such as the trial judge or counsel. At sentencing, appellant told the court that he had been clear-headed and understood the proceedings. Moreover, the issue of competency was not raised either during the trial or at the time of sentencing. The post-conviction proceedings which raised the issue were not commenced until 8 years after the conviction.

Appellant was receiving a relatively small dose of Thorazine several months before and during the trial. The effects of the larger doses he received when he was sent to the Minnesota Security Hospital in St. Peter were neither complained of nor apparent at trial. A review of the pretrial proceedings and the trial transcript revealed no irregularities in appellant's behavior or ability to communicate with counsel concerning the defense.

Moreover, the state's expert testified as to the minimal sedative effect of a 100-milligram dosage of Thorazine. His testimony was credible and is in accord with other expert opinions on the effects of antipsychotic drugs. Even though he did not examine appellant in reaching his opinion, Dr. Colón reasonably based his opinion on an evaluation of the relatively small dose appellant had been taking for several months.

■ Finally, appellant's delay in seeking relief is a relevant consideration in determining whether that relief should be granted. *Wieland,* 457 N.W.2d at 715; *Jones v. State,* 288 Minn. 527, 529, 179 N.W.2d 315,

317 (1970). Here, appellant petitioned for relief nearly 7 years after his appeal, 8 years after his conviction. Even assuming appellant was unable to petition for relief until he was completely "off" Thorazine in 1986, the 4-year delay weighs against appellant.

■ Appellant contends in his pro se supplemental brief that the Thorazine affected his decision not to testify at trial. Where counsel actually refuses to allow the defendant to testify rather than merely advises a client not to testify, this court will grant a new trial. *Marhoun v. State,* 451 N.W.2d 323, 328 (Minn.1990). Here, appellant acknowledged at the post-conviction proceeding that the decision not to testify was made after discussing the issue with his counsel. Appellant's decision not to testify apparently was based on his potential impeachment by his prior criminal record. There is no evidence that counsel actually refused to allow appellant to testify. Thus, this claim is without merit.

■ Finally, appellant contends that he received ineffective assistance of counsel. A convicted defendant who claims ineffective assistance of counsel so egregious that a new trial is required must prove:

> First * * * that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Gates v. State,* 398 N.W.2d 558, 561–62 (Minn.1987) (applying the *Strickland* test). Appellant alleged that his counsel was ineffective because he had no prior criminal trial experience; however,

 

appellant pointed to no deficiency in the defense provided. On this record, the post-conviction court could have reasonably concluded that appellant did not establish incompetence or ineffective assistance of counsel.

This court must deny appellant's request for post-conviction relief.