Leland M. HOAGLAND, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. CX–93–104.

Supreme Court of Minnesota.

June 17, 1994.

John M. Stuart, State Public Defender, Mark D. Nyvold, Sp. Asst. Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Hennepin County Attorney, Lisa A. Berg, Asst. County Atty., Minneapolis, for respondent.

## OPINION

PAGE, Judge.

This case arises from the postconviction court's denial, in part, of defendant Leland Mark Hoagland's 1991 petition for postconviction relief under Minn.Stat. ch. 590 (1992). In his petition, Hoagland sought to have his convictions reversed outright or to be granted a new trial based on the following grounds: first, the destruction of the trial court reporter's notes made review of the legality of his convictions impossible; second, the evidence presented at trial was legally insufficient for conviction for first degree murder; and third, his constitutional rights under the Fourth and Fifth Amendments of the United States Constitution and corresponding provisions of the Minnesota Constitution were violated. The petition also alleged ineffective assistance of counsel and made general allegations of a denial of due process. Finally, Hoagland sought to have one of his life sentences for first degree murder vacated under Minn.Stat. § 609.04. The court granted defendant's petition with respect to vacating one of his sentences under Minn.Stat. § 609.04 and denied the petition in all other respects. We hold that because Hoagland has been deprived of a meaningful review of his conviction he is entitled to a new trial, provided that a new trial would not unduly prejudice the state. Because the postconviction court did not reach the question of whether a new trial would be unduly prejudicial to the state, we vacate the postconviction court's denial of a new trial. We remand this case to the postconviction court for a determination of whether a new trial would be unduly prejudicial to the state.

Defendant was convicted of two counts of first degree murder in the death of blind, seventy-one-year-old Luella Larson in 1983.[1] Minn.Stat. §§ 609.185(2), 609.185(3). This

---

1. Hoagland had three accomplices in the crime, each of whom was convicted at a separate trial. Mahlon Goodridge was convicted on two counts of first degree murder. Mitchell Peirce was convicted on one count of first degree murder and one count of second degree murder. Troy Palthen, the fourth codefendant, was convicted of second degree murder.

court described the crimes defendant and the others committed in *State v. Goodridge*, 352 N.W.2d 384, 386–87 (Minn.1984):

> During the evening of November 19, 1982, defendant [Goodridge] socialized with three friends—Mitchell Pierce [sic-Peirce], Leland Mark Hoagland and Troy Palthen. The four drank beer and smoked marijuana at defendant's house in north Minneapolis. About 11:00 p.m., they ran out of beer and then began planning a burglary "to get some more liquor and * * * maybe some quick money." * * * The four left defendant's [Goodridge's] house about 11:45 p.m. and walked toward 2827 Humboldt Avenue North. .

The victim, Mrs. Luella Larson, lived alone at that residence. Her husband had died only nine days earlier. She was 71 years old and totally blind. That evening, Mrs. Larson had gone to bed before defendant [Goodridge] and his friends [Hoagland, Peirce, and Palthen] arrived at her home.

When the four arrived at their destination, they initially tried to enter through the rear door, but found it locked. Palthen then discovered that the front door was unlocked and they all entered the house. Once inside, they found Mrs. Larson asleep in her bedroom. Pierce [sic] and Hoagland tied her up with a belt they found in the house. After ransacking the bedroom in an unsuccessful attempt to find cash, defendant [Goodridge] demanded that the victim reveal the location of her money. He admitted kicking and striking her when she failed to respond to his inquiries. He gave the following statement to the police:

> I kicked her once in the mouth and once on the shoulder and I slapped her a few times and I hit her once in the mouth with my fist. Mark [Hoagland] was holding her mouth most of the time. Mitch [Peirce] kept yelling at me to hit her so she'd tell us where the money was. I wasn't beating her for fun but Mitch was. He was slamming his fist into her face and her blood was flying and he was yelling at her to tell him where the money was and he kept on

hitting her. Mark [Hoagland] was beating her hard with his fist too.

At some point, Mrs. Larson was able to free an arm to reach for an alarm by her bed. Defendant [Goodridge] saw her reaching for the alarm and knocked her hand away. Hoagland then tied her up again. Sometime later, defendant rubbed saliva on Mrs. Larson's ring finger and removed her wedding rings.

Denying that he sexually assaulted the victim, defendant [Goodridge] described the following indignities to which she was subjected by the others:

> Mitch [Peirce] and Mark [Hoagland] had her on the bed and they sexually assaulted her. I don't know exactly what they did but they had her on the bed and one of them was sticking his fingers in and out of her ass—I'm pretty sure that was Mitch because he was hollering "Fuck her in the ass," and telling her that we were going to kill her if she didn't tell us where the money was. He could have been sticking his fingers in her vagina too. Mitch had a little flashlight and he could have jammed that up her too, but I'm not sure about that. They had her panties down around her knees.

Approximately twenty minutes after entering the house, Mrs. Larson's assailants left, leaving her lying lifeless on the bed. * * * Along with the wedding rings, they obtained some steaks, beer, brandy, a gold watch, and about ten dollars.

*See also State v. Peirce*, 364 N.W.2d 801, 804–05 (Minn.1985).

Shortly after his arrest on November 25, 1982, Hoagland confessed to his involvement in the burglary and beating of Mrs. Larson, but denied that he sexually assaulted her. The jury convicted him of two counts of first-degree murder: murder while committing a burglary and murder while committing criminal sexual conduct. The convictions were not appealed.

In 1987, the trial court reporter destroyed the stenographic notes of Hoagland's trial. The notes had never been transcribed because Hoagland had not appealed his conviction. As a result, review of the full trial record is impossible. From 1983 until 1990

the state's Records Retention Schedule for District Court required criminal case notes for felonies and gross misdemeanors be retained for 20 years from the conclusion of the case.[2] That mandate was violated when the trial court reporter destroyed the stenographic notes. In 1990 the trial judge passed away, making it virtually impossible to reconstruct the record.

At the postconviction hearing, Hoagland explained his failure to appeal his convictions as the result of misleading statements by the trial judge and his defense counsel at sentencing and his defense counsel's failure to explain his appeal rights. The allegedly misleading statement by the trial judge occurred when the trial judge said, "I know there will be an automatic appeal by the State Public Defender's Office or someone else." At the sentencing Hoagland's trial counsel made the following statement: "Your honor, inasmuch as this sentence is mandatory and inasmuch as this matter will probably be appealed, I don't see any merit in making any statement in view of the mandatory sentence, your honor."

As a consequence of these statements by the trial judge and defense counsel, Hoagland alleges that he believed his appeal was automatic and that he was not required to take any action to perfect the appeal. He further alleged that he never talked to other inmates or to any lawyer about the appeal and that he had no reason to inquire about the progress of his "automatic" appeal between 1983 and 1991. In an affidavit submitted at the postconviction hearing, Hoagland's trial counsel indicated that he "did not discuss the merits of an appeal and how one files an appeal and obtains appointed counsel" with Hoagland. Hoagland claims he first learned that he had to initiate an appeal when he went through reception and orientation when he was transferred to the Minnesota Correctional Facility–Stillwater in 1991. He then contacted the Public Defender's Office and petitioned for postconviction relief.

At Hoagland's postconviction hearing, the state offered evidence establishing that when Hoagland was incarcerated at the St. Cloud

Reformatory and again five months later when he was transferred to the Minnesota Correctional Facility–Oak Park Heights, both institutions had an orientation policy of giving each new inmate a handout explaining appeal and postconviction rights and procedures. The state further established that Hoagland had been aware of Goodridge's and Peirce's appeals and knew that both had been decided.

While the postconviction court vacated one of Hoagland's life sentences, the court found Hoagland had not raised specific defects in the trial proceedings and so failed to establish reviewable error. Concluding that Hoagland deliberately chose not to appeal, the postconviction court did not consider whether the absence of a trial record deprived Hoagland of his right of review. The postconviction court also found that the evidence which was preserved in the appeals of Goodridge and Peirce amply supported Hoagland's conviction. In this appeal, Hoagland contends the lack of a trial record makes it impossible for him to assert specific claims of error and support them with references to the record and that merely because the evidence preserved in Goodridge's and Peirce's appeals would support a conviction, it does not follow that he received a fair trial.

■ This court has made it clear that "a convicted defendant is entitled to at least one right of review by an appellate or postconviction court." *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (Minn.1976). In a direct appeal of a criminal conviction, this court "must determine, under the facts in the record and any legitimate inferences that can be drawn from those facts, whether a jury could reasonably conclude that defendant was guilty of the offense charged." *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988). A reviewing court cannot consider a sufficiency-of-evidence issue unless provided with a trial transcript. *Godbout v. Norton*, 262 N.W.2d 374 (Minn.1977), *cert. denied* (citing *Custom Farm Services, Inc. v. Collins*, 306 Minn. 571, 238 N.W.2d 608 (1976)), *appeal dis-*

---

2. Presently, criminal case notes for felonies and gross misdemeanors need only be retained for 10

years. Records Retention Schedule for District Court (1990).

*missed,* 437 U.S. 901, 98 S.Ct. 3086, 57 L.Ed.2d 1131 (1978).

Our state procedural rules indicate a transcript is important to, but not always essential for, a meaningful appeal. Minn. R.Crim.P. 28.02, subd. 8 (1992), states that "[t]he record on appeal shall consist of the papers filed in the trial court, the offered exhibits, and the transcript of the proceedings, if any." This subdivision also provides that a statement of the case prepared by the parties and the trial court may be used in lieu of a trial record. Minn.R.Crim.P. 28.02, subd. 9, incorporates the Rules of Civil Appellate Procedure, "to the extent applicable," to "govern the transcript of the proceedings and the transmission of the transcript and record to the Court of Appeals * * *." Minn.R.Civ.App.P. 110.03 handles the problem of an unavailable trial transcript as follows:

> If no report of all or any part of the proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may, within 15 days after service of the notice of appeal, prepare a statement of the proceedings from the best available means, including recollection. * * * The statement and any [of respondent's] objections or proposed amendments then shall be submitted to the trial court, and the statement as approved by the trial court shall be included in the record.

Rule 110.04 permits:

> In lieu of the record * * * the parties [to] prepare and sign a statement of the record showing how the issues presented by the appeal arose and were decided in the trial court and setting forth only the facts averred and proved or sought to be proved which are essential to a decision of the issues presented. The agreed statement shall be approved by the trial court * * *.

In the present case, however, the record cannot be reconstructed in either manner because the trial judge died in 1990. Had either alternative been available, we would not be ordering the case remanded for a determination of prejudice.

■ Our state rules of criminal procedure also establish the fundamental importance of a trial transcript for judicial review. Minn. R.Crim.P. 31.02 states that "[p]lain errors or defects affecting substantial rights may be considered by the court upon motions for new trial, post-trial motions, and on appeal although they were not brought to the attention of the trial court." When the notes of the trial were improperly destroyed, a critical source to review for determining whether prejudicial errors were made was destroyed. A transcript is especially important where, as here, the defendant has new counsel in the review proceeding. *See United States v. Selva,* 559 F.2d 1303, 1305–06 (5th Cir.1977). We hold that when both the trial judge and defense counsel make statements which could mislead a defendant about the appeal process; when an employee of the judicial system fails to follow clearly stated judicial policies and consequently a defendant is deprived of a transcript to his trial for appeal; and when it is impossible to reconstruct the trial because of the trial judge's death, that defendant is entitled to a new trial unless he has abused the judicial process or the state can establish that it would be unduly prejudiced by a new trial.

Many courts have reached similar results on a variety of bases. In *Hardy v. United States,* 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), the Court stated "[t]he right to notice 'plain errors or defects' is illusory if no transcript is available at least to one whose lawyer on appeal enters the case after the trial is ended." [3] The Wisconsin Supreme Court has interpreted the Wisconsin constitution as giving a criminal defendant a right to a meaningful appeal. This right in turn requires the defendant be furnished a full transcript or a functionally equivalent substitute. *State v. Perry,* 136 Wis.2d 92, 401 N.W.2d 748, 751 (1987) (granting a new trial because substantial gaps in the trial record could not be reconstructed). North Dakota

---

**3.** The Court based its decision on 28 U.S.C. § 753(b) which requires that a court reporter "shall[] record[] verbatim by shorthand [or by] mechanical means * * * all proceedings in crim-inal cases had in open court" and Fed.R.Crim.P. 52(b) which is substantially similar to Minn. R.Crim.P. 31.02.

reached the same result through an interpretation of a state rule of criminal procedure. *State v. Decker,* 181 N.W.2d 746, 748–51 (N.D.1970). *See also, People v. Harrell,* 115 A.D.2d 943, 497 N.Y.S.2d 518 (1985) (where no trial notes can be located, conviction must be reversed and new trial granted); *Commonwealth v. Shields,* 477 Pa. 105, 383 A.2d 844 (1978) (stating that the right to appeal entails the right to a "full transcript or other equivalent picture" and granting appellant a new trial when no transcript is available and the defendant is not at fault); *State v. Ford,* 338 So.2d 107 (La.1976) (holding state constitution requires new trial where criminal defendant was not responsible for missing transcript and has new counsel on appeal).

Hoagland pled not guilty to the crimes with which he was charged. The state was required to prove his guilt beyond a reasonable doubt. After his conviction, Hoagland is entitled to meaningful review. Because no record of the trial is available, it is impossible to review the allegations of error raised in the postconviction petition. In this case, state court personnel are directly responsible for the inability to review the record. This court has a responsibility to supervise the judicial system. When the system fails, we must act. We will not deny a criminal defendant a meaningful review of his conviction simply because court employees failed to preserve the stenographic notes of the trial.

■ The postconviction court did not believe either Hoagland's assertion that he waited until 1991 to seek review of his conviction because he was misled or his contention that he believed an appeal was underway in his case, yet failed to inquire about its progress for eight years. Indeed, the court found Hoagland's testimony to be "incredible." On that basis the postconviction court in essence concluded that Hoagland had sat on his right to have his case reviewed and thereby forfeited it. We cannot say the court abused its discretion in concluding Hoagland was not credible, and it is true that a postconviction court's decision to deny a new trial will not be overruled unless that court abused its discretion. *Fox v. State,* 474 N.W.2d 821, 824 (Minn.1991). A convicted defendant, however, does not necessarily waive his right to meaningful postconviction review by choosing not to appeal.

■ Hoagland's eight-year delay in filing for postconviction relief does not constitute an abuse of process so extreme as to deny him a new trial. This case must be distinguished from *Fox v. State,* 474 N.W.2d 821 (Minn.1991), and *Wieland v. State,* 457 N.W.2d 712 (Minn.1990). In both *Fox* and *Wieland,* we held that delays in filing for postconviction relief of seven or more years weighed against the petitioners. The petitioners in *Fox* and *Wieland,* unlike Hoagland, had transcripts to use in preparing their petitions and received meaningful review of the petitions on the merits.

■ If the state establishes that it will be unduly prejudiced, a new trial should be denied. The burden of establishing undue prejudice is on the state. *See, e.g., Kost v. State,* 356 N.W.2d 680, 682 (Minn.1984) (citing IV A.B.A. Standards of Criminal Justice, Post–Conviction Remedies 22–2.4 and 22–6.2 (1980)). The postconviction court did not reach the question of prejudice and the state did not thoroughly address the issue in its presentation to the court.

Some degree of prejudice to the state is inherent in any retrial. Whether the state will be unduly prejudiced by a retrial must be determined from the facts of each case. To be sure, the amount of time that has elapsed since the original trial is in itself an indicator of the difficulty the state may face, but more is required. *See, e.g., Wensman v. State,* 342 N.W.2d 150 (Minn.1984); *Jones v. State,* 288 Minn. 527, 179 N.W.2d 315, 317 (Minn.1970).

We cannot tell from this record whether the state would be unduly prejudiced in a retrial and, therefore, remand on this issue to the trial court. We note, however, the state reported that one of its witnesses had died and that it was unable to locate two other witnesses, but the record does not establish the importance of their testimony for defendant's conviction. The state found that those witnesses it could locate did not recall their testimony at trial. The state did not, however, establish that these witnesses' recollections could not be refreshed with infor-

mation from the record of either Peirce's, Goodridge's, or Palthen's trials. The state failed to do this even though the state offered an affidavit from the prosecutor which stated the witnesses and evidence offered were largely identical at all four trials. From the record it appears that the state did not interview the prosecuting or defense attorneys at any length, or review the records of the other trials to determine what concrete difficulties it might experience in retrying the case. The state reports that one witness purportedly is unwilling to return to Minnesota to testify, but makes no showing that the witness cannot be made to testify under compulsory process available under Minn.Stat. § 634.07 (1992). The state did not indicate that it would have difficulty in locating the physical evidence which the record indicates was introduced at trial. Nor did the state effectively counter Hoagland's argument that the state would find retrial easier because Hoagland's three codefendants could now be required to testify against him.

We vacate the postconviction court's decision and remand for a determination of whether a new trial would be unduly prejudicial to the state.