**Brian JAMES, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A03–489.**

Supreme Court of Minnesota.

July 7, 2005.

John M. Stuart, State Public Defender, Cathryn Middlebrook, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, Gaylord Saetre, Todd County Attorney, Long Prairie, MN, for Respondent.

## OPINION

PAGE, Justice.

This case arises from a postconviction court's denial of Brian James's postconviction petition to withdraw his guilty plea. James contends that because he was not informed of a statutorily mandated conditional release term before the conditional release term was actually imposed he is entitled to have either his plea withdrawn or his sentenced modified. The postconviction court denied James's petition. On appeal, the court of appeals declined to reach the merits of James's claims, held that James's petition was not timely under Minn. R.Crim. P. 15.05, subd. 1, and affirmed the postconviction court's denial of James's petition.

In June 1997, James was charged with one count of criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.344, subd. 1(d) (2004), and one count of burglary in the first degree in violation of Minn.Stat. § 609.582, subd. 1(c) (2004). James negotiated a plea agreement with the state whereby he agreed to plead guilty to an amended charge of criminal sexual conduct in the fourth degree in violation of Minn.Stat. § 609.345, subd. 1(d). In exchange for James's guilty plea, the burglary charge was dismissed and the state promised to recommend that James be sentenced to 36 months in prison with execution of the sentence stayed and no more than 10 years of supervised release. At the time of James's offense, Minn.Stat. § 609.346, subd. 5(a) (1996), required that any sentence imposed on a defendant convicted of a criminal sexual conduct offense who had a previous criminal sexual conduct conviction include a mandatory 10-year conditional release term. It appears from the record that James, who had a

previous criminal sexual conduct conviction, was not made aware of the conditional release term during the plea negotiations.

On October 27, 1997, the district court held a plea hearing and accepted the plea agreement. James was sentenced in accordance with the terms of the plea agreement on July 8, 1998. In addition, the court required James to serve 242 days in jail. The court failed, however, to inform James at either the plea hearing or the sentencing hearing about the 10-year conditional release term, nor did the court impose the conditional release term at the time of sentencing.

In October 1999, the district court revoked James's probation and executed his 36-month prison sentence. At the probation revocation hearing, the court, for the first time, informed James that he would be subject to a mandatory conditional release term. Specifically, the court said that, upon the completion of his sentence, James would "be placed on conditional release for an additional period of 10 years." James did not object to or otherwise challenge imposition of the conditional release term at that time.[1] Although the exact date is not clear from the record, James completed his sentence and was released from prison and placed on concurrent supervised release and conditional release sometime in the spring of 2001.[2] After his supervised release period ended, James remained on conditional release. On June 24, 2002, James's conditional release was revoked and he was reincarcerated.

Eight months after James returned to prison, 22 months after the district court amended the Criminal Judgment and Warrant of Commitment, and 39 months after the court imposed the conditional release term, he filed a petition for postconviction relief challenging, for the first time, the imposition of the 10-year conditional release term. In the petition, James argued that under *State v. Garcia*, 582 N.W.2d 879 (Minn.1998), and *State v. Jumping Eagle*, 620 N.W.2d 42 (Minn.2000), he had an absolute right to either have his sentence modified or be allowed to withdraw his plea because the conditional release term was not included in his original plea agreement. The postconviction court denied James's petition. In so doing, the postconviction court found that there was no requirement that James be notified of the 10-year conditional release term before his probation was revoked, that James was notified of the conditional release term at his probation revocation hearing, and that James was not entitled to postconviction relief because his guilty plea was motivated by a desire to avoid incarceration.

Although the court of appeals affirmed the postconviction court, it did so on grounds not considered by the postconviction court. *James v. State*, 674 N.W.2d 216 (Minn.App.2004). The court of appeals concluded that under Minn. R.Crim. P. 15.05, subd. 1, James's petition for postconviction relief was untimely, and without reaching the merits of James's petition, held that James was not entitled to postconviction relief. *Id.* at 220. In this ap-

---

1. Notwithstanding the court's statement, the court's Criminal Judgment and Warrant of Commitment dated October 25, 1999, indicates that James was to be subject to a five-year conditional release term. On April 9, 2001, the court issued an Amended Criminal Judgment and Warrant of Commitment changing James's conditional release term from five to ten years.

2. Conditional release and supervised release run concurrently from the date the offender is released from prison after having served two-thirds of the executed sentence. *See State v. Brown*, 606 N.W.2d 670, 672 n. 2 (Minn. 2000).

peal, James raises two issues: (1) whether his petition for postconviction relief was untimely, thus barring relief; and (2) if the petition was timely, whether he is entitled to the relief sought. Because we conclude that James's petition was timely and that he is entitled to relief under our decisions in *Garcia* and *Jumping Eagle,* we reverse the court of appeals and remand to the postconviction court for further proceedings.

## I.

In this appeal, James challenges the court of appeals' denial of his petition for postconviction relief. The state contends that James is not entitled to postconviction relief because he delayed 39 months before challenging the district court's imposition of the 10–year conditional release term. The court of appeals held in favor of the state. *James v. State,* 674 N.W.2d at 220. The court reasoned that under Minn. R.Crim. P. 15.05, subd. 1, "James's motion to withdraw his guilty plea, filed more than * * * three years after the imposition of the conditional-release term, was not timely." *James,* 674 N.W.2d at 219.

When a criminal defendant seeks to withdraw a guilty plea under Rule 15.05, after the defendant has been sentenced, the motion to withdraw the plea must be raised in a petition for postconviction relief. *See* Minn.Stat. § 590.01 (2004). When determining whether to grant a petition for postconviction relief, we have consistently held that:

> [D]elay is one relevant factor against granting relief, and in extreme cases may justify denial of relief. *Rairdon v. State,* 557 N.W.2d [318,] 322 [(Minn. 1996)] (citing *Gaulke v. State,* 296 Minn. 487, 487, 206 N.W.2d 652, 652 (1973) (relief denied based on 25–year delay)). But we have a commitment to convicted defendants' rights to at least one sub-

stantive review. *Rairdon,* 557 N.W.2d at 322 (9–year delay did not preclude review on the merits); *Hoagland v. State,* 518 N.W.2d 531, 536 (Minn.1994) (8–year delay alone did not preclude relief because the burden is on the state to establish undue prejudice by delay); *Riggers v. State,* 284 Minn. 543, 543–44, 169 N.W.2d 58, 59 (1969) (33–year delay did not preclude relief).

*Butala v. State,* 664 N.W.2d 333, 338 (Minn.2003); *see also Fox v. State,* 474 N.W.2d 821, 826 (Minn.1991) (appellant's four-year delay in seeking relief is a relevant consideration in determining whether that relief should be granted); *McMaster v. State,* 551 N.W.2d 218, 218–19 (Minn. 1996) (appellant's 15–year delay in filing a petition for postconviction relief was "deliberate and inexcusable" and constituted abuse of judicial process because defendant purposefully delayed to avoid extradition for crimes committed in a foreign jurisdiction); *Chapman v. State,* 282 Minn. 13, 20–21, 162 N.W.2d 698, 703 (1968) ("We have refused to order vacation of a plea of guilty when manifest injustice has not been demonstrated. We have held that delay in seeking relief is a relevant consideration."). As evidenced by this line of cases, our treatment of postconviction petitions with respect to the issue of delay does not depend on whether the petitioner seeks to withdraw a guilty plea under Rule 15.05 or otherwise claims that the conviction obtained or the sentence imposed violates the criminal defendant's rights.

The court of appeals noted that embedded within Rule 15.05, subdivision 1, is a specific timeliness requirement for plea withdrawal motions. The rule provides that:

> The court shall allow a defendant to withdraw a plea of guilty upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to

correct a manifest injustice. Such a motion is not barred solely because it is made after sentence. If a defendant is allowed to withdraw a plea after sentence, the court shall set aside the judgment and the plea.

Minn. R.Crim. P. 15.05, subd. 1. Although the rule requires that the motion be timely made, the language of the rule does not provide guidance on how courts are to determine the timeliness of such a motion. However, when a plea withdrawal request is raised after sentencing in a petition for postconviction relief, we conclude that there is no reason to treat timeliness under Rule 15.05 differently from the manner in which delays in filing petitions for postconviction relief are treated.

Accordingly, the timeliness of a petition to withdraw a guilty plea is a relevant consideration in determining whether that relief should be granted. *See Butala,* 664 N.W.2d at 338. Furthermore, a delay that is deliberate and inexcusable constituting an abuse of the judicial process, as in *McMaster,* is sufficient grounds to justify denial of relief solely on the basis that the petition is untimely. *See McMaster,* 551 N.W.2d at 218–19. The petition for postconviction relief at issue in this case was filed 39 months after James was first notified of the mandatory 10–year conditional release term at his probation revocation hearing. Thus, James's delay is one relevant factor to be considered in determining whether to grant his requested postconviction relief. But, in light of our case law, the facts of this case, and the fact that James has not had at least one substantive review of his case, we see, as we did in *Butala,* "no substantive basis for denying review of [James's] petition on the merits because of delay." 664 N.W.2d at 338.

## II.

We next consider whether the postconviction court committed error when it denied James's petition for postconviction relief. Our scope of review on appeal from a postconviction court's denial of relief is limited to determining whether the court abused its discretion, including whether there was sufficient evidence to support the court's conclusions. *Woodruff v. State,* 608 N.W.2d 881, 884 (Minn.2000). "Determining what the parties agreed to in a plea bargain is a factual inquiry for the postconviction court to resolve." *State v. Rhodes,* 675 N.W.2d 323, 326 (Minn. 2004), *cert. denied,* — U.S. —, 125 S.Ct. 134, 160 L.Ed.2d 137 (2004). However, the interpretation and enforcement of plea agreements present legal issues that we review de novo. *Jumping Eagle,* 620 N.W.2d at 43.

In *State v. Brown,* we stated:

A valid guilty plea "must be accurate, voluntary and intelligent (*i.e.,* knowingly and understandingly made)." *Perkins v. State,* 559 N.W.2d 678, 688 (Minn. 1997). The voluntariness requirement insures that a guilty plea is not entered because of any "improper pressures or inducements." *Brown v. State,* 449 N.W.2d 180, 182 (Minn.1989). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). "Allowing the government to breach a promise that induced a guilty plea violates due process." *United States v. Van Thournout,* 100 F.3d 590, 594 (8th Cir.1996) (quoting *Margalli–Olvera v. INS,* 43 F.3d 345, 351 (8th Cir.1994)). On demonstration that a plea agreement has been breached, the court may allow

withdrawal of the plea, order specific performance, or alter the sentence if appropriate. *See, e.g., Van Thournout,* 100 F.3d at 594 (citing *Margalli–Olvera v. INS,* 43 F.3d at 354–55); *Correale v. United States,* 479 F.2d 944, 950 (1st Cir.1973); *State v. Trott,* 338 N.W.2d 248, 252 (Minn.1983).

A guilty plea cannot be induced by unfulfilled or unfulfillable promises, including a promise of a sentence unauthorized by law. Where a sentence is illegal and therefore invalidly imposed, the voluntariness of the plea is drawn into question. *See Chae v. People,* 780 P.2d 481, 485–86 (Colo.1989); *cf. Trott,* 338 N.W.2d at 252 (noting unqualified promise of probation would permit the withdrawal of plea on ground of unfulfilled promise). But a plea agreement calling for an unauthorized sentence cannot be specifically enforced. *See Garcia,* 582 N.W.2d at 881–82.

606 N.W.2d 670, 674 (Minn.2000).

The postconviction court here evidently concluded that James's case was factually similar to *Brown.* In *Brown,* we concluded that the record supported the postconviction court's conclusion that "Brown understood the range of his sentence to be between [25 years'] probation and an executed double durational departure sentence [172 months]." 606 N.W.2d at 674. It was significant that, at the time of Brown's guilty plea, he articulated his understanding of the agreement. Brown said:

> If I successfully complete the program, then I would, then I would get the probation. If I don't get into the program, then it would be a normal sentence. If I get in and goof, then it would be double. I do understand.

*Id.* at 672. Thus, as we noted in *State v. Wukawitz,* the addition of conditional release did not violate the terms of Brown's plea agreement because:

> (1) Brown's plea was induced more by promise of an opportunity for probation and rehabilitation than by an agreed-upon sentence, and (2) Brown understood when he entered his plea that he could receive a sentence of up to 172 months and that this agreement was not breached when the conditional release term was added to the 86–month term of imprisonment.

662 N.W.2d 517, 524 (Minn.2003) (citing *Brown,* 606 N.W.2d at 674–75 & n. 6). On that basis, we concluded that Brown's guilty plea was knowingly and understandingly made and held that the postconviction court did not err in denying Brown's petition to withdraw his plea. *Brown,* 606 N.W.2d at 675.

In the case now before us, the postconviction court found that:

> [T]he fact that no specific reference was made to the 10–year period of conditional release at the time the plea was taken simply doesn't matter because Mr. James' decision to plead pursuant to the plea agreement was based on the opportunity it gave him to avoid prison altogether if he successfully completed what was required of him under the probationary sentence. Formal disclosure and actual knowledge of the 10–year period of conditional release, *had it occurred,* simply would not have changed Mr. James' decision about whether to plead guilty pursuant to the plea agreement proposal made by the State.

(Emphasis added.)

We disagree. This case bears a greater resemblance to *Garcia* and *Jumping Eagle* than to *Brown.* In *Garcia* and *Jumping Eagle,* we considered whether the defendants should be entitled to withdraw their guilty pleas because the plea agreements they entered into with the state did

not contemplate the mandatory conditional release term. *Garcia*, 582 N.W.2d at 882; *Jumping Eagle*, 620 N.W.2d at 43. Garcia had pleaded guilty to attempted first-degree criminal sexual conduct in exchange for an 81–month sentence. *Garcia*, 582 N.W.2d at 880. The applicable mandatory conditional release term was not included in the plea petition, nor was it addressed at any of the hearings leading to the district court's acceptance of the plea or sentencing. *Id.* at 880–81. Garcia became aware of the conditional release term a year and a half after the court accepted his plea at a resentencing hearing when the state made a motion to include the term in Garcia's sentence. *Id.* at 881. We held that "the prosecution promised Garcia an 81–month executed sentence, which did not include a conditional release term * * *. This unqualified promise is unauthorized by law and therefore, Garcia must be allowed to withdraw from the plea agreement if he so chooses." *Id.* at 882.

As in *Garcia*, the mandatory conditional release term at issue in *Jumping Eagle* was not mentioned to Jumping Eagle at the sentencing hearing, nor was it imposed by the court. *Jumping Eagle*, 620 N.W.2d at 43. Jumping Eagle was sentenced according to the agreement to 172 months in prison, a double durational upward departure from the presumptive sentence. *Id.* Execution of the sentence was stayed and Jumping Eagle was placed on 30 years' supervised release. *Id.* Jumping Eagle's probation was revoked five years later and at that time his prison sentence was executed and the mandatory conditional release term was imposed. *Id.* On appeal, we held that Jumping Eagle's plea agreement was invalid because, with the imposition of the conditional release term, Jumping Eagle could serve a sentence in excess of the upper limit contemplated at the time he entered into the plea agreement. *Id.* at 44.

Here, James was not made aware of the applicable mandatory 10–year conditional release term at the time he entered his plea of guilty or when he was sentenced. James agreed to plead guilty to fourth-degree criminal sexual conduct in exchange for a 36–month sentence with execution stayed and placement on 10 years' supervised release. The longest possible period of incarceration contemplated by James's plea agreement was 36 months. With the addition of the mandatory conditional release term, James's longest possible period of incarceration increased from 36 months to 156 months. Just as in *Garcia* and *Jumping Eagle*, but unlike in *Brown*, the addition of the 10–year conditional release term to James's sentence resulted in a sentence that was in excess of the upper limit contemplated at the time he entered into the plea agreement. Because the 10–year conditional release term was mandatory, the plea agreement as agreed to by James was induced by an unfulfillable promise. We conclude therefore that the plea agreement was not knowingly and understandingly made. As a result, James is entitled to withdraw his plea or, if withdrawal would be unduly prejudicial to the state, have the agreement modified in a way that does not violate the agreement. *See Wukawitz*, 662 N.W.2d at 527–29.

Reversed and remanded.

ANDERSON, G. BARRY, J., took no part in the consideration or decision of this case.

BLATZ, Chief Justice (dissenting).

I agree with the majority's conclusion that James's 39–month delay in bringing his petition is a relevant consideration in determining whether James is entitled to withdraw his guilty plea. However, because I disagree with the terms under

which the majority has reversed and remanded, I respectfully dissent.

In a series of decisions addressing the relationship between plea agreements and the imposition of conditional release, our court has struggled to reconcile the requirements of constitutional due process, our rules of criminal procedure, and the conditional release statute. *See State v. Wukawitz*, 662 N.W.2d 517, 523–25 (Minn. 2003); Minn.Stat. § 609.109, subd. 7 (2004). This case focuses on the distinct procedural question of whether James's motion was timely under Minn. R.Crim. P. 15.05, subd. 1, which provides that "[t]he court shall allow a defendant to withdraw a plea of guilty upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Thus, a successful plea withdrawal petition—in all cases—must meet two separate requirements: first, the plea must be timely; second, the petition must show that plea withdrawal is necessary to correct a manifest injustice.

In keeping with the plain language of Rule 15.05, subd. 1, we have repeatedly stated that timeliness is a relevant factor in determining whether a petitioner should be allowed to withdraw his plea. *Rairdon v. State*, 557 N.W.2d 318, 322 (Minn.1996) ("In general, delay in filing a petition for postconviction relief is one relevant factor against granting relief."); *Fox v. State*, 474 N.W.2d 821, 826 (Minn.1991) ("[D]elay in seeking relief is a relevant consideration in determining whether that relief should be granted.").

Although we have repeated the principle that timeliness is a factor in evaluating plea withdrawal petitions, we have elected in the great majority of cases to substantively review petitions on the merits—regardless of their timeliness—if the issues raised have not previously received substantive review. *See, e.g., Alanis v. State*, 583 N.W.2d 573 (Minn.1998) (reviewing on merits when defendant filed postconviction petition to withdraw plea four months after sentencing); *Perkins v. State*, 559 N.W.2d 678 (Minn.1997) (reviewing on merits when defendant delayed six months to file postconviction petition to withdraw plea); *State v. Ecker*, 524 N.W.2d 712 (Minn.1994) (reviewing on merits when defendant pleaded guilty to first-degree murder, lost a direct appeal of his sentence, then filed a postconviction petition to withdraw plea five years after sentencing).

While we prefer to review petitioners' claims on the merits, in order for the timeliness requirement in Rule 15.05, subd. 1, to retain any vitality, that preference cannot be absolute. The rule requires *both* timeliness and a showing of manifest injustice. Accordingly, there may be cases in which a petitioner has satisfied the manifest injustice requirement of Rule 15.05, subd. 1, but nonetheless should be denied relief because the petition was not timely brought. This may be one of those cases.

In *Wukawitz* we struck a balance between the dictates of the conditional release statute and constitutional due process concerns. 662 N.W.2d at 527. That balance, however, is not insulated from our procedural rules of law. Rule 15.05, subd. 1, applies to every plea withdrawal petition—and for good reason. Under the reasoning in *Wukawitz*, if a defendant agrees to a specific sentence but does not receive notice of the imposition of a conditional release term until after his sentence is executed—as here—the defendant's due process rights have been violated and, accordingly, the "manifest injustice" prong of Rule 15.05, subd. 1, has been met. *See Wukawitz*, 662 N.W.2d at 522, 526. However, because the defendant in *Wukawitz* brought his plea withdrawal petition shortly after being notified of the imposition of a conditional release term, we had no occa-

sion in that case to consider under what circumstances a petition that has met the manifest injustice prong of Rule 15.05, subd. 1, may nonetheless be untimely.

Here, although the postconviction court did not address the timeliness of James's petition, the court of appeals found the issue dispositive. *James v. State,* 674 N.W.2d 216, 220 (Minn.App.2004). Although I agree with the court of appeals that there may be instances in which a court may conclude a defendant's plea withdrawal petition is untimely—and thereby preclude relief under Rule 15.05, subd. 1—I believe such a determination cannot be made by an appellate court on a record as slight as the one in this case, with no ruling on the timeliness issue by the postconviction court. Accordingly, I believe this case should be remanded to the postconviction court with instructions that the court consider whether James's petition was timely.

Although Rule 15.05, subd. 1, does not provide clear guidance regarding how courts should determine whether a plea withdrawal petition is timely, the advisory committee comment to the Rule specifies that determining whether a plea withdrawal is timely "is left * * * to judicial decision." Minn. R.Crim. P. 15.05 cmt. (citing *Chapman v. State,* 282 Minn. 13, 162 N.W.2d 698 (1968)). The comment follows ABA Standards regarding plea withdrawal, which state that a plea withdrawal request must be "made with due diligence, considering the nature of the allegations therein." *ABA Standards for Criminal Justice: Pleas of Guilty,* Standard 14–2.1(b) (3d ed. 1999).

In determining the timeliness of a petition like the one at hand, it must be recognized that the balance struck by our court in *Wukawitz* already relaxes the strict requirements of the conditional release statute. In that case, we concluded that due process considerations mandate that if a defendant has not received notice of the imposition of conditional release until after sentencing, he is entitled to withdraw his plea or have his sentence modified to comport with his plea agreement. 662 N.W.2d at 526. In determining which option should be ordered by the district court, we stated that "the state should be allowed to present argument" regarding whether the state would be unduly prejudiced by allowing the defendant to withdraw his plea. *Id.*

In those cases in which the passage of time has unduly prejudiced the state's ability to reprosecute, the remedy established in *Wukawitz* spares the state from having to retry a stale case in which a conviction would be unlikely. In turn, defendants receive the full benefit of the bargains they struck with the state and escape the imposition of conditional release.

I believe that reconciling the remedy in *Wukawitz* with the timeliness requirement in Rule 15.05, subd. 1, requires postconviction courts to distinguish between the delay caused by the state and the delay caused by the defendant in evaluating whether the state has been unduly prejudiced. As noted earlier, the defendant in *Wukawitz* promptly moved to withdraw his plea; thus the timeliness of his motion was not at issue. Here, however, James served his prison sentence, remained free on conditional release for a number of months, violated the terms of his conditional release, and had his conditional release revoked. Then, only after having spent an additional eight months in prison for violating his conditional release, did he move to withdraw his plea.

By essentially waiving the timeliness requirement of Rule 15.05, subd. 1, the majority gives criminal sexual conduct defendants who have pled guilty and received notice of conditional release after sentenc-

ing a strong interest in delaying as long as possible before moving to withdraw their guilty pleas. Such delay all but assures that the state will not be able to reprosecute, obtain a conviction, and impose the conditional release term as mandated by the legislature.

Accordingly, I would reverse and remand with instructions for the postconviction court to evaluate whether James's petition was timely under Rule 15.05, subd. 1. The parties should be allowed to present argument regarding whether the state has been unduly prejudiced by the defendant's delay in bringing his plea withdrawal petition. In making its decision regarding the timeliness of James's petition, the court should consider the degree to which the state's nearly two-year delay in notifying James of the imposition of conditional release prejudiced its ability to reprosecute. If the postconviction court concludes that the state's delay did not completely foreclose the possibility of successful reprosecution, the court should then evaluate whether James's 39–month delay unjustifiably frustrated the state's ability to reprosecute, thereby assuring that James would completely escape the possibility of serving the mandated conditional release term. *See Wukawitz,* 662 N.W.2d at 527. Because the majority is not reversing and remanding with instructions for the postconviction court to determine whether James brought his petition with due diligence, I respectfully dissent.

ANDERSON, PAUL H., J. (dissenting).

I join the dissent of Chief Justice Blatz.