STATE of Minnesota, Respondent,

v.

Delfino G. MIRANDA, Appellant.

No. C4–00–524.

Court of Appeals of Minnesota.

Jan. 23, 2001.

354

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant Ramsey County Attorney, St. Paul, MN, (for respondent).

John M. Stuart, State Public Defender, Marie L. Wolf, Assistant State Public Defender, Minneapolis, MN, (for appellant).

Considered and decided by AMUNDSON, Presiding Judge, SCHUMACHER, Judge, and HALBROOKS, Judge.

## OPINION

AMUNDSON, Judge

Appealing from a conviction for first-degree controlled substance offense, the appellant argues that he was prejudiced by police failure to notify him of his right to have the Mexican consul notified of his arrest. Appellant argues that a violation of the Vienna Convention is a structural error and that, in any event, he has shown prejudice by providing an affidavit from the Mexican consul stating of what he would have been advised if the consul had been notified. He claims that, because the police lacked valid consent and that no exigent circumstances existed to warrant an invasion of his residence, their entrance was illegal. We affirm.

## FACTS

On June 21, 1999, the St. Paul police received a 911 call from the daughter of appellant Delfino Miranda. Miranda's daughter reported that he had poured gasoline throughout their home and was threatening to burn it with the family inside. Miranda's daughter also told police that he was hallucinating and high on heroin. She informed police that her 21 year-old sister, her sister's six-month-old baby, and her mother were present in the home.

Officer Suzanne Drutschmann was dispatched to the residence. When she arrived, Miranda's wife and daughter were in

the front yard. Officer Drutschmann heard a man, later identified as Miranda, inside the house yelling. Miranda's wife and daughter gave Officer Drutschmann permission to enter the home.

Upon entering the residence, Officer Drutschmann smelled a strong odor of gasoline or kerosene, noted that the floor was wet, and observed Miranda holding a lighter in his right hand. Officer Drutschmann arrested and handcuffed Miranda. After his arrest, but before he was placed inside the squad car, Officer Drutschmann searched Miranda and discovered a white rolled up sock in his left front pant pocket. Tests revealed that the sock contained 38.6 grams of methamphetamine. An investigation also revealed a red gasoline can in the bushes near the home.

During an interview with Sergeant Kellerman the following day, Miranda confessed that the drugs found inside his pocket were for his own use and that he injected a mixture of heroin and crank twice daily. At no time was Miranda, a Mexican national, notified of his right to contact the Mexican consulate as provided by the Vienna Convention on Consular Relations. After waiving his right to a jury trial, and after a trial before the court, Miranda was convicted on October 21, 1999, of a first-degree controlled substance violation. This appeal followed.

## ISSUES

I.   Under the Vienna Convention on Consular Relations, must a foreign national, who was arrested and detained but never informed of his right to contact his consular representative, demonstrate that he was prejudiced by such a violation before his confession can be suppressed?

II.   Did appellant demonstrate that he was prejudiced by law enforcement's failure to inform him of his right to contact his consular representative?

III.   Was the warrantless entry into appellant's home rendered reasonable by ei-

ther the presence of exigent circumstance or co-occupant consent?

## ANALYSIS

### I.   Vienna Convention on Consular Relations

· The Vienna Convention on Consular Relations requires that foreign nationals who are arrested or detained must be advised of the right to consult their consular officials. Vienna Convention on Consular Relations, April 24, 1963 [1970], art. 36(1)(b), 21 U.S.T. 77, T.I.A .S. No 6820 [hereinafter "Vienna Convention"]. As a treaty made under the authority of the United States Constitution, the Vienna Convention is the supreme law of the land. U.S. Const. art. VI, cl. 2; *see also Antoine v. Washington,* 420 U.S. 194, 201, 95 S.Ct. 944, 949, 43 L.Ed.2d 129 (1975) (treaties are binding upon affected states under the Supremacy Clause).

The parties agree that Miranda was not informed of his rights under the Vienna Convention. The district court concluded that while the terms of the Vienna Convention had been violated, Miranda failed to demonstrate any prejudice arising as a result. It denied Miranda's motion to suppress his statement.

Miranda contends that even without a showing of prejudice, the failure of the police to notify him of his right to speak with his consular representative requires a reversal of his conviction and a new trial. Alternatively, he argues that, even if a showing of prejudice is required, the district court erred in concluding that Miranda failed to demonstrate prejudice. The state contends that Miranda must make a showing of prejudice to be entitled to any relief for the violation of his right to consult his consulate and that the district court correctly concluded that Miranda failed to make such a showing.

### A.   Is a showing of prejudice required?

· ■   State courts have jurisdiction to enforce rights that arise under federal law.

*Ademodi v. State,* 616 N.W.2d 716, 717 n. 2 (Minn.2000) (citing *Owens v. Chicago Great Western Ry. Co.,* 113 Minn. 49, 53, 128 N.W. 1011, 1013 (1910)). Whether a showing of prejudice is required when seeking a judicial remedy for violation of the Vienna Convention is an issue of first impression for this court. The Minnesota Supreme Court has declined to interpret the requirements of the treaty. *Ademodi,* 616 N.W.2d at 717 n. 2 (finding that the appellant waived his Vienna Convention claim, thereby avoiding any discussion of whether a person whose rights have been violated under the Vienna Convention must first demonstrate prejudice before obtaining relief.)

This issue is currently being reviewed in several courts throughout the United States. The Vienna Convention itself does not prescribe any recourse for violation of its requirement that a foreign national be informed of the right to consult with a consular representative upon being arrested. *United States v. Ademaj,* 170 F.3d 58, 67 (1st Cir.1999). Thus, foreign nationals charged with criminal law violations have been seeking judicial remedies for violation of their Vienna Convention rights.

The Ninth Circuit has concluded that the Vienna Convention confers on foreign nationals the right of consular assistance following arrest. *United States v. Lombera–Camorlinga,* 170 F.3d 1241, 1242–43 (9th Cir.1999); *United States v. Rangel–Gonzales,* 617 F.2d 529, 530 (9th Cir.1980); *United States v. Calderon–Medina,* 591 F.2d 529, 530 (9th Cir.1979).

While the United States Supreme Court has not addressed the issue on the merits, it has stated that if the Vienna Convention is violated and the issue was raised properly at trial and proved,

> it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial.

*Breard v. Greene,* 523 U.S. 371, 377, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998);

*see also Lombera–Camorlinga,* 170 F.3d at 1244 (defendant bears initial burden of showing prejudice); *Murphy v. Netherland,* 116 F.3d 97, 100 (4th Cir., 1997) (defendant failed to demonstrate prejudice from alleged violation of his Vienna Convention rights); *Faulder v. Johnson,* 81 F.3d 515, 520 (5th Cir.1996) (reversal of conviction due to alleged Vienna Convention violation unwarranted because help from Canadian consulate would have been the same as or cumulative of defense counsel's assistance); *Waldron v. I.N.S.,* 17 F.3d 511, 518–19 (2d Cir.1993) (showing of prejudice required when alien seeks to avoid deportation based on violation of Vienna Convention right); *United States v. Proa–Tovar,* 975 F.2d 592, 595 (9th Cir. 1992) (alien seeking to exclude evidence of deportation order must establish that prejudice resulted from violation of Vienna Convention right).

The remedy of suppression is not available for every violation of federal law, but is limited to the violation of the most basic and valued constitutional rights. Courts addressing the issue appear reluctant to equate a violation of a defendant's right to consular notification with other rights such as the right to counsel. Similarly persuaded, we conclude that Miranda bears the burden of proving he was prejudiced by the violation.

## B. Did Miranda demonstrate that he was prejudiced by violation of his Vienna Convention rights?

Miranda contends that, in fact, he made a sufficient showing of prejudice. He submitted an affidavit from the Mexican consulate outlining the policies of the consulate. It would have advised Miranda not to speak with investigative authorities without an attorney present and not to answer any questions asked of him in English.

Before giving his statement to the police, Miranda was informed of his right to counsel and the right to remain silent. He

voluntarily waived those rights. Thereafter, Sergeant Kellerman interviewed Miranda who confessed that the drugs in his pocket were for his personal use and that he had a $250–$300 a day heroin and crank habit. This confession was part of the evidence presented to the court and provided the basis for Miranda's conviction for possession of methamphetamine.

Miranda's confession was given in English. But he makes no claim that he did not understand English or that he did not understand his right to counsel and his right to remain silent. There is no indication that he did not know how to retain an attorney. Simply put, Miranda failed to demonstrate that assistance from the Mexican consul would have resulted in a different, more beneficial, outcome.

## II. The Search

Miranda next argues that the warrantless entry into his residence constituted an unreasonable search in violation of the Fourth Amendment prohibition against unreasonable searches and seizures. Miranda argues that his conviction should be reversed because the seizure of illegal drugs on his person incident to his arrest violated his constitutional rights.

■ The Fourth Amendment of the United States Constitution and Article I of the Minnesota Constitution prohibit unreasonable searches and seizures of persons and their homes. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches and seizures are per se unreasonable, subject to only a few established exceptions. *State v. Dickerson,* 481 N.W.2d 840, 843 (Minn.1992). The recognized exceptions include "(1) a search conducted incident to a lawful arrest, (2) a search conducted because of exigent circumstances, and (3) a search conducted with consent." *State v. Hatton,* 389 N.W.2d 229, 232 (Minn.App.1986), *review denied* (Minn. Aug. 13, 1986). The state contends that consent to search the residence by a third party was given and that exigent circumstances existed to justify a search.

## A. Exigent Circumstances

■■ Two exigencies justify a warrantless search: (1) a situation where the danger to persons or to evidence is highly compelling and (2) when an aggregation of factors creates a 'totality of the circumstances' situation. *State v. Hummel,* 483 N.W.2d 68, 72 (Minn.1992). In certain circumstances a single factor such as protection of human life can create exigent circumstances. *State v. Gray,* 456 N.W.2d 251, 256 (Minn.1990) (citing *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 299–300, 87 S.Ct. 1642, 1646–47, 18 L.Ed.2d 782 (1967)).

Here the risk of an explosion in the home suffices alone to create an exigent circumstance. Officer Drutschmann testified that she observed gasoline on the floor and Miranda brandishing a lighter. She testified that she was concerned that a lighter spark could "blow up the place along with me as well."

■ Additionally, an examination of the totality of circumstances reveals exigent circumstances were present, permitting a warrantless entry into Miranda's home. We look to the following factors:

(a) whether a grave or violent offense is involved; (b) whether the suspect is reasonably believed to be armed; (c) whether there is strong probable cause connecting the suspect to the offense; (d) whether police have strong reason to believe the suspect is on the premises; (e) whether it is likely the suspect will escape if not swiftly apprehended; and (f) whether peaceable entry was made.

*Gray,* 456 N.W.2d at 256. Applying these factors, we find that exigent circumstances existed to justify an entry into Miranda's residence.

First, this offence was certainly a grave one. The 911 caller, Miranda's daughter, told police that Miranda was threatening to burn down the house and everybody in it. Second, while not armed with a fire-

arm, Miranda was holding a lighter and standing on a floor covered with of highly inflammable liquid. Third, more than sufficient probable cause existed to connect Miranda to the attempted arson offense. In addition to the information police received from members of his family, an officer observed Miranda in his home, which was covered in gasoline, holding a lighter. Fourth, Miranda was obviously in the home. Co-residents told police that Miranda was inside and Officer Drutschmann heard Miranda yelling from inside the house and observed him there from the threshold of the open front door. Fifth, although the likelihood of Miranda attempting to escape is unknown, peaceable entry was made. Under either analysis the requisite exigent circumstances were present and the warrantless entry in to Miranda's home was proper.

## B. Consent

Did officer Drutchmann have permission to enter the premises? The district court found that Officer Drutschmann was given permission to enter the home. We will not reverse the findings of the district court unless those findings are clearly erroneous. *State v. Byers*, 570 N.W.2d 487, 491 (Minn.1997), *cert. denied* 523 U.S. 1123, 118 S.Ct. 1807, 140 L.Ed.2d 946 (1997). Where there is reasonable evidence to support them, findings of fact are not disturbed unless clearly erroneous. *State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994).

An individual may certainly consent to a search of his or her own premises. *State v. Thomas*, 598 N.W.2d 389, 391 (Minn.App.1999). Similarly, a person with 'common authority' or other sufficient relationship to the premises, may consent to a search of the dwelling. *State v. Pilot*, 595 N.W.2d 511, 519 (Minn.1999).

Officer Drutschmann testified that both Miranda's wife and daughter, occupants with common authority over the premises, consented to the search of the dwelling. Both Miranda's wife and daughter testified that they gave no such permission. Following Officer Drutchmann's testimony, the district court specifically found that Officer Drutschmann was given permission to enter the home.

Weighing the credibility of the witnesses is the exclusive province of the factfinder. *State v. Larson*, 520 N.W.2d 456, 461 (Minn.App.1994), *review denied* (Minn. Oct. 14, 1994). This court defers to the district court's ability to judge the credibility of witnesses. Minn.R.Civ.P. 52.01. The district court's finding that Officer Drutschmann was given permission to enter the home is not clearly erroneous. The warrantless entry into Miranda's residence was proper.

## DECISION

While appellant's right to consular notification under the Vienna Convention was violated, appellant was not prejudiced thereby, and suppression of his confession was not warranted. The warrantless entry into appellant's residence was proper. Accordingly appellant's conviction is affirmed.

**Affirmed.**