**STATE of Minnesota, Appellant,**

v.

**James BYRON, Respondent.**

**No. A03–1166.**

Court of Appeals of Minnesota.

July 13, 2004.

Mike Hatch, Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for appellant.

Paul Engh, Minneapolis, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; WRIGHT, Judge; and HUSPENI, Judge.*

## OPINION

WRIGHT, Judge.

Approximately four years after pleading guilty to third-degree controlled substance crime, respondent moved to withdraw his guilty plea, arguing that the district court's failure to advise him of the immigration consequences of his guilty plea resulted in a manifest injustice. The district court granted respondent's motion and *sua sponte* granted plea withdrawal due to violations of the Vienna Convention. The state challenges the procedural and substantive bases for plea withdrawal. We reverse.

## FACTS

Respondent James Stanford Byron, an alien national from Trinidad and Tobago, received unconditional permanent resident status in October 1992. *See generally* 8 U.S.C. § 1255 (2000). On July 16, 1999, Byron was charged with two counts of third-degree controlled substance crime for marijuana sale and possession, respectively. *See* Minn.Stat. § 152.023, subds. 1, 2 (1998).

Pursuant to a plea agreement, Byron pleaded guilty to the possession count on August 11, 1999. He executed a four-page plea petition that provided in relevant part:

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

My attorney has told me and I understand that if I am not a citizen of the United States, conviction of a crime may result in deportation, exclusion from admission to the U.S.A., or denial of naturalization.

When the plea petition was submitted to the district court, Byron acknowledged that he understood the rights enumerated in the plea petition and stated that he wanted to waive those rights and enter a guilty plea. Byron then admitted possessing more than ten kilograms of marijuana.

Neither Byron nor his counsel raised any objections prior to the district court's acceptance of the plea. The district court stayed imposition of the sentence and placed Byron on three years' probation. After moving to modify his sentence, Byron was granted an early discharge from probation on December 20, 2000, and the felony conviction was reduced to a misdemeanor. *See* Minn.Stat. § 609.13, subd. 1(b) (2000).

In late February 2003, Byron traveled to Trinidad and Tobago. On March 8, 2003, when Byron sought re-entry to the United States as a returning resident alien via an immigration port of entry in Miami, federal immigration authorities arrested Byron as deportable and held him in custody. Byron then applied for "cancellation of removal" to prevent his deportation.

Federal immigration authorities relied on 8 U.S.C. § 1182(a)(2)(A)(i)(II) (2000) to bar Byron's re-entry. In relevant part, it provides that "any alien convicted of … acts which constitute the essential elements of … a violation of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance … is inadmissible." An inadmissible alien may prevent deportation by applying for "cancellation of removal" under 8 U.S.C. § 1229b(a) (2000), which provides:

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony.

An "aggravated felony" is defined to include "illicit *trafficking* in a controlled substance." 8 U.S.C. § 1101(a)(43)(B) (2000) (emphasis added). These statutes were in effect when Byron entered his guilty plea in 1999. *See* Pub.L. No. 105–100, § 204(b) (1997 amendment to § 1229b(a)); Pub.L. No. 104–208, §§ 308(d)(1), 321(a) (1996 amendments to §§ 1101(a), 1182(a)(2)(A)(i)).

Following a hearing on April 25, 2003, an immigration judge held that Byron's controlled substance conviction made him inadmissible. Based on the finding that Byron's conviction of *possession* of a controlled substance was an aggravated felony,[1] the immigration judge concluded that

---

1. The immigration judge relied on *In re Yanez–Garcia*, 23 I. & N.Dec. 390 (B.I.A.2002), to determine whether Byron's offense was an aggravated felony. In that case, the Board of Immigration Appeals adopted the federal circuits' majority rule, holding that state law controls whether an offense is a felony. *Id.* at 398. It also held that a stayed sentence does not affect the classification of the underlying offense. *Id.* at 401. Although Byron's conviction was reduced to a misdemeanor under state law, it is not a settled question whether federal immigration law will recognize this reclassification. *Compare Alberto–Gonzalez v. I.N.S.*, 215 F.3d 906, 909–10 (9th Cir.2000) (determining classification according to the actual term of imprisonment), *with Copeland v. Ashcroft*, 246 F.Supp.2d 183, 187–88 & n. 5 (W.D.N.Y.2003) (determining classification

the Attorney General had no discretion to grant cancellation of removal. *See* 8 U.S.C. § 1229b(a).

On June 12, 2003, Byron moved to withdraw the guilty plea, arguing that, because he was not advised of the immigration consequences of his plea, it was not intelligently made. Plea withdrawal was required, Byron contended, to correct a "manifest injustice." In addition to challenging the merits of Byron's argument, the state argued that the motion was untimely. The state maintained that the delayed motion would unfairly prejudice the prosecution of the case because the drugs in the case "likely" had been destroyed. The state did not produce any proof of the drugs' destruction.

Without ruling on the state's procedural argument that the motion was untimely, the district court found that new immigration regulations made deportation a "definite and virtually automatic outcome" for resident aliens with felony drug convictions. The district court then held that, because Byron was not properly informed of the immigration consequences, his plea was not intelligently made and thus violated due process. On its own initiative, the district court also concluded that the right to due process was violated because Byron did not receive assistance of consul under the Vienna Convention on Consular Relations. On these grounds, the motion for withdrawal was granted. The state appeals.

## ISSUES

I. Was respondent's motion for plea withdrawal timely under Minn. R.Crim. P. 15.05, subd. 1?

II. Did the district court err in concluding that respondent's guilty plea violated due process because he was not advised about the immigration consequences prior to entering the plea?

III. Did violations of the Vienna Convention on Consular Relations provide a basis for plea withdrawal?

## ANALYSIS

### I.

We review a district court's decision to hear a motion for plea withdrawal for an abuse of discretion. *Bolinger v. State,* 647 N.W.2d 16, 20–21 (Minn.App. 2002). A motion for plea withdrawal may proceed after sentencing and shall be allowed "upon timely motion." Minn. R.Crim. P. 15.05. There is no explicit time limit barring motions for a plea withdrawal, but the motion should be "made with due diligence, considering the nature of the allegations quoted therein." *James v. State,* 674 N.W.2d 216, 219 (Minn.App. 2004) (quoting *Chapman v. State,* 282 Minn. 13, 17, 162 N.W.2d 698, 701 (1968)), *review granted* (Minn. Apr. 20, 2004).

Several factors guide the determination of whether a motion for plea withdrawal is timely. One is the district court's interest in preserving the finality of convictions. *State v. Washburn,* 602 N.W.2d 244, 246 (Minn.App.1999). Another is the defendant's diligence when seeking withdrawal. *See Doughman v. State,* 351 N.W.2d 671, 675 (Minn.App.1984), *review denied* (Minn. Oct. 16, 1984). A third factor is whether the delay causes undue prejudice to the state's prosecution of the case. *James,* 674 N.W.2d at 220. It is the state's burden to prove such undue prejudice. *State v. Wukawitz,* 662 N.W.2d 517, 527 (Minn.2003).

We are mindful of concerns about the finality of convictions, particularly where a motion for withdrawal follows complete ex-

according to whether offense was classifiable    as a felony under federal law).

ecution of the sentence. But Byron diligently moved forward with his motion shortly after serious immigration consequences arose as a result of his guilty plea. Most significantly, the state shoulders the burden of establishing that delay caused undue prejudice to its case. Here, the state's speculative assertion as to the likelihood that the drugs were lost fails to meet its burden of proof. Thus, we conclude that the district court did not abuse its discretion in proceeding with Byron's motion for withdrawal.

## II.

█ We review a district court's decision to grant plea withdrawal for an abuse of discretion. *Barragan v. State,* 583 N.W.2d 571, 572 (Minn.1998). On questions of fact, if there is sufficient evidence to support the district court's findings, they will not be disturbed. *State v. Aviles–Alvarez,* 561 N.W.2d 523, 525 (Minn.App.1997), *review denied* (Minn. June 11, 1997). But we review de novo the district court's rulings on legal issues. *Meemken v. State,* 662 N.W.2d 146, 148 (Minn.App.2003).

█ A district court "shall allow" withdrawal of a guilty plea when it is "necessary to correct a manifest injustice." Minn. R.Crim. P. 15.05, subd. 1. A manifest injustice occurs if the plea does not comply with constitutional due process requirements that the plea be accurate, voluntary, and intelligent. *State v. Rhodes,* 675 N.W.2d 323, 326 (Minn.2004). The only issue here is whether the guilty plea was intelligently made. To be intelligently made, a guilty plea must be entered after a defendant has been informed of and understands the charges and direct consequences of a plea. *Alanis v. State,* 583 N.W.2d 573, 577 (Minn.1998).

In *Alanis,* which presented similar facts, the Minnesota Supreme Court defined direct consequences.

> [D]irect consequences are those which flow definitely, immediately, and automatically from the guilty plea—the maximum sentence and any fine to be imposed. Further, it makes sense that deportation is not a direct consequence of the guilty plea because deportation is neither definite, immediate, nor automatic. Before a resident alien ... can be deported, the INS must exercise its discretion to commence deportation proceedings and, prior to deportation, there are various administrative procedures which must be followed.

*Id.* at 578–79. Relying on this rule, we have held that indirect or collateral consequences include restraints on civil privileges such as driver's licenses and firearms ownership. *See State v. Washburn,* 602 N.W.2d 244, 246 (Minn.App.1999); *State v. Rodriguez,* 590 N.W.2d 823, 825 (Minn. App.1999), *review denied* (Minn. May 26, 1999).

The Minnesota Supreme Court revisited the definition of direct consequences in *Kaiser v. State* when considering whether sex offender registration was a direct consequence of conviction. 641 N.W.2d 900, 904 (Minn.2002). The *Kaiser* court conceded that registration was "definite, immediate and automatic because the offender is required to register immediately ... upon entering a guilty plea." *Id.* But the supreme court held that direct consequences must also be punitive:

> Consequences flowing from the plea that are not punishment serve a substantially different purpose than those that serve to punish, as they are civil and regulatory in nature and are imposed in the interest of public safety.... [They] serve to protect the public from a potentially dangerous class of persons and are

collateral, not direct, consequences of the sentences imposed.

*Id.* at 905.

In support of its finding, the district court cited three recent amendments to the immigration regulations. Two of the amendments were not substantive, relating to the division of the now-defunct Immigration and Naturalization Service between the Department of Justice and the Department of Homeland Security. *See* Authority of the Department of Homeland Security, 68 Fed.Reg. 10,922, 10,922 (Mar. 6, 2003); Aliens and Nationality Reorganization of Regulations, 68 Fed.Reg. 9,824, 9,825 (Feb. 28, 2003). The other amendment constrained the attorney general's discretion to grant deportation waivers. Waiver of Criminal Grounds of Inadmissibility for Immigrants, 67 Fed.Reg. 78,675, 78,676 (Dec. 26, 2002) (to be codified at 8 C.F.R. § 212.7(d)). This waiver authority, which does not arise out of an application for cancellation of removal, is limited by statute to cases where the basis for deportation is an offense involving thirty grams or less of marijuana. 8 U.S.C. § 1182(h). Thus, not one of the cited regulations substantively affected Byron's deportation proceedings. *See id.* §§ 1101(a)(43), 1182(a)(2)(A), 1229b(a).

The immigration laws at stake in Byron's case have not changed since *Alanis.* Although the immigration judge ruled that Byron's conviction of possession of a controlled substance, albeit *not* a drug trafficking offense, denies the Attorney General discretion to grant cancellation of removal, this ruling does not render Byron's deportation a direct, punitive consequence of his guilty plea. Deportation still arises in a separate forum, is contingent upon action by federal immigration authorities, and does not flow immediately from a guilty plea. We, therefore, conclude that deportation, even under the circumstances here, remains a collateral consequence. Because due process does not require Byron to be informed of this consequence, his guilty plea was intelligently made. Moreover, the facts here do not support Byron's contention that he was not advised of the immigration consequences of his guilty plea. In his plea petition, Byron was warned of the danger of deportation. We presume that, prior to entry of a guilty plea, defense counsel reviews the plea petition with the defendant and the defendant understands its terms. *State v. Lopez,* 379 N.W.2d 633, 638 (Minn.App.1986), *review denied* (Minn. Feb. 14, 1986). Accordingly, the district court abused its discretion by allowing withdrawal on grounds of manifest injustice.

**III.**

On appeal from a district court's grant of postconviction relief, we review the district court's findings for sufficient evidentiary support in the record, and we review its legal conclusions de novo. *Dukes v. State,* 621 N.W.2d 246, 251 (Minn.2001). If a defendant fails to preserve an objection prior to entry of a guilty plea, we may find that the issue is waived and decline to consider it. *See Blondheim v. State,* 573 N.W.2d 368, 368 (Minn.1998); *State v. Wallace,* 545 N.W.2d 674, 676 (Minn.App.1996), *review denied* (Minn. May 21, 1996).

Under Article 36 of the Vienna Convention, upon the arrest of a foreign national, authorities shall give notice to that person's consulate and shall inform the arrestee of the right to consul. Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77. To obtain a remedy for violation of the Vienna Convention, a defendant must first show that the violation resulted in actual prejudice. *State v. Miranda,* 622 N.W.2d 353, 356 (Minn.App. 2001). Under these facts, the defendant

must show that assistance of consul would have affected the outcome of the case. *Id.* at 356–57.

Byron did not assert that his rights were affected by lack of access to consul. Furthermore, the district court did not make any finding that violations of the Vienna Convention resulted in actual prejudice. In the absence of evidence of actual prejudice, we hold that the district court abused its discretion by granting Byron's plea withdrawal motion on this ground.[2]

## DECISION

The district court did not abuse its discretion in considering respondent's motion for plea withdrawal. As a matter of due process, Byron need not be advised of collateral immigration consequences prior to his plea. Accordingly, it was an abuse of discretion for the district court to grant the motion for plea withdrawal on grounds that the plea was not intelligently made. Because the district court did not find, nor is there evidence of, actual prejudice from violation of the Vienna Convention, the district court erred in granting plea withdrawal as a remedy on this basis.

**Reversed.**

HUSPENI, Judge (concurring in part, dissenting in part).

I concur with the conclusion of the majority that Byron's motion to withdraw his guilty plea was not time-barred. I also agree that the state did not meet its burden of showing prejudice.

If the district court had denied Byron's motion to withdraw the plea, I expect that this court would have affirmed that denial as being within the sound and broad discretion of the district court. I believe an affirmance is warranted here also on that same basis, and respectfully dissent from that portion of the majority opinion that reverses the district court.

In granting the motion to withdraw, the district court expressed concern:

I'm very troubled by the result here where the purpose of a stay of imposition rather than a stay of execution is clearly if the person behaves well to have a misdemeanor on their record. And there were no collateral consequences during the time that this pled felony was, in fact, a felony. The consequences now are based upon what appears to be a new rule or new application of the law.

It seems to me that a reviewing court might not only recognize the validity of a district court's expressed concerns, but might also grant deference to those concerns. I take little issue with the majority's analysis of post–9/11 immigration law and procedure, and concur with the views expressed in the concluding paragraph of the majority opinion, regarding the draconian nature of Byron losing his adopted home. I also remain convinced that the district court here exercised its broad discretion in a manner that it believed would ensure the fair administration of justice. I can find no abuse of discretion in that exercise and would affirm.

---

**2.** We are mindful of the district court's effort to avoid what may appear to be a harsh result. Although governing precedent precludes us from permitting plea withdrawal as a remedy here, we recognize that the Minnesota Supreme Court may elect to do so if the supreme court finds it necessary to ensure "the fair administration of justice." *Cf. Pow-* ell v. Anderson, 660 N.W.2d 107, 113 (Minn. 2003) (acknowledging its supervisory power to ensure the fair administration of justice); *State v. Gilmartin*, 535 N.W.2d 650, 653 (Minn.App.1995) (declining to exercise supervisory powers reserved for the Minnesota Supreme Court), *review denied* (Minn. Sept. 20, 1995).