STATE of Minnesota, Respondent,

v.

Robert Raru BATCHELOR, Appellant.

No. A09–1770.

Court of Appeals of Minnesota.

Aug. 10, 2010.

Lori Swanson, Attorney General, St. Paul, MN; Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by CONNOLLY, Presiding Judge; STONEBURNER, Judge; and SCHELLHAS, Judge.

## OPINION

CONNOLLY, Judge.

Appellant challenges his sentence for first-degree assault, which was the longer of two sentences agreed to in his plea bargain and that was based on his failure to return for his scheduled sentencing date. Appellant argues that due process required the district court to make the findings outlined in *State v. Austin* before imposing the longer sentence. Appellant also argues that the district court abused its discretion by refusing to allow him to move to withdraw his guilty plea. Because the findings outlined in *State v. Austin* were not required and the district court did not abuse its discretion by denying his motion to withdraw his guilty plea, we affirm.

## FACTS

Appellant Robert Raru Batchelor pleaded guilty to one count of felony firearm possession by a prohibited person and one count of first-degree assault. Appellant admitted at his plea hearing that on May 3, 2008, Minneapolis police officers found him in possession of a handgun, which he was prohibited from possessing because of his previous convictions of controlled-substance crimes and aggravated robbery. Appellant also admitted that on June 17, 2008, he assaulted a fellow inmate in the Hennepin County Jail. Appellant stated that although he initially acted in self-defense in that encounter, he eventually exercised an unreasonable amount of force that included biting off a portion of the victim's eyelid, resulting in the victim's serious permanent disfigurement.

As part of the plea agreement, appellant agreed to testify as a witness in a homicide trial that was scheduled for May 2009. The terms of the agreement provided that appellant would be temporarily released from custody to put his affairs in order after the homicide trial, and that if he returned on his scheduled sentencing date, he would receive concurrent sentences of 60 months. However, appellant agreed that if he did not return for his sentencing, he would instead receive the guidelines sentence for first-degree assault, which was 161 months in prison. The first-degree-assault count was to be amended to first-degree attempted assault at the time of sentencing if appellant complied with the conditions attached to his release. The district court questioned appellant, and he stated that he understood these conditions.

On June 3, 2009, appellant appeared before the district court for a hearing pertaining to his temporary release from custody. The prosecutor stated that appellant was required to appear at sentencing on June 10, and that if he failed to appear at his sentencing hearing, he would receive the longer sentence. Defense counsel questioned appellant, who indicated that he understood the conditional nature of the 60–month sentence:

DEFENSE COUNSEL: You understand the risk you're taking?

APPELLANT: Yes.

DEFENSE COUNSEL: So you still want to do it?

APPELLANT: Yes.

DEFENSE COUNSEL: So if you don't show up, when they do catch you, you're going to get nailed.

APPELLANT: Yes.

The district court then repeated this requirement to appellant: "So I will release you ... on all the cases. And you come back for sentencing next week on June 10th, and if you come back then you get the 60 months—60 months concurrent on the two cases you pled to." The district court reiterated, "If you show up you get the 60 months concurrent. If you don't show up, then when we catch you, you get the 160 months, which is the presumptive sentence on the assault case." [1]

When appellant failed to appear in district court on June 10, the court issued a bench warrant for appellant's arrest. He was arrested two days later. At a subsequent sentencing hearing, the state asked the district court to honor the parties' plea agreement and sentence appellant to the guidelines sentence. Appellant stated that he "wasn't trying to run or nothing like that," but had merely "gotten the dates mixed up." The district court expressed

---

1. There were mixed references at this hearing to "160 months" and "161 months," but both were clearly linked to the presumptive guidelines sentence. Any potential confusion between 160 and 161 months is not challenged in this appeal.

doubt about this explanation, stating, "it's hard to believe that you could get yourself so mixed up when your new date was only a week away." Appellant replied, "I know. I had the dates mixed up.... I wasn't trying to run, not to get one hundred and some months for two days, you know what I'm saying?"

The district court stated that it was imposing the guidelines sentence of 161 months on the assault count. Appellant then asked, "Can I [make] a motion to take my deal back?" The district court replied, "No." On defense counsel's request, the district court agreed to additional credit for time served. The district court then sentenced appellant to 60 months on the firearm-possession count, to be served concurrently. This appeal follows.

## ISSUES

I. Did the district court's imposition of a 161-month sentence pursuant to the plea agreement without making the findings outlined in *State v. Austin* violate appellant's due-process rights?

II. Did the district court abuse its discretion by refusing to allow appellant to withdraw his guilty plea?

## ANALYSIS

### I.

■ Appellant asks this court to articulate a new rule that procedural due process requires the district court to specifically find that a defendant's failure to appear at a scheduled sentencing hearing was intentional or inexcusable before imposing an agreed-on sentence instead of a reduced sentence that was expressly conditioned upon appearance at the scheduled sentencing hearing. Appellant suggests that the findings required by *State v. Austin*, 295 N.W.2d 246 (Minn.

1980), would be appropriate, and also cites *Carrillo v. Fabian*, 701 N.W.2d 763 (Minn.2005), and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in support of his due-process argument.

*Austin* requires a district court to make three findings before revoking a probationer's probation. 295 N.W.2d at 250. First, the district court must designate which specific conditions of probation were violated. *Id.* Second, it must find that the violation was intentional or inexcusable. *Id.* And third, it must find that the need for confinement outweighs the policies favoring probation. *Id.* The requirement that a district court make the three *Austin* findings before revoking probation is based on the constitutional right to due process of law. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn.2005). However, *Austin* findings apply only to the revocation of probation and execution of the underlying sentence and are not required, for example, when a district court imposes intermediate sanctions—including incarceration—for probation violations. *State v. Cottew*, 746 N.W.2d 632, 634 (Minn. 2008). Given the supreme court's holding that "the *Austin* findings are only required before a defendant's probation is revoked," *id.* at 637, we will not create a new rule of law extending *Austin* to the imposition of a negotiated sentence.

■ "Whether due process is required in a particular case is a question of law, which we review de novo." *Carrillo*, 701 N.W.2d at 768. A due-process analysis requires courts to consider whether the state has interfered with a party's liberty or property interest and, if so, whether the procedures provided were constitutionally sufficient. *Id.* "A constitutionally-protected liberty interest arises from a legitimate claim of entitlement rather than simply an abstract need or desire or a uni-

lateral expectation." *Id.* Although appellant surely *desired* a 60–month rather than a 161–month sentence, his plea agreement specifically contemplated a guidelines sentence of 161 months. Because appellant entered a guilty plea in which the reduced sentence was conditioned upon his appearance for sentencing, and because he in fact failed to appear, he had no legitimate claim of entitlement to the reduced sentence.

Appellant's reliance on *Austin, Carrillo,* and *Morrissey* is misplaced. As discussed above, the *Austin* findings are only required in the probation-revocation context. Similarly, *Morrissey* sets forth the minimal procedural requirements due before parole may be revoked, such as notice, disclosure, and a hearing before a neutral hearing body or judicial officer. 408 U.S. at 489, 92 S.Ct. at 2604. And *Carrillo* holds only that a prison inmate has a protected liberty interest in his supervised release, which requires the fact-finder to find by a preponderance of the evidence that he has committed a disciplinary offense before extending the date of his supervised release. 701 N.W.2d at 773, 777. Appellant fails to explain why cases governing parole and probation revocation, rather than cases governing negotiated pleas, should inform our decision in this case, and we decline to apply the cases cited by appellant out of context.

Appellant also asks us to make our due-process determination based on "a situation in which the defendant is injured in a car accident and is unable to attend sentencing due to being unconscious in the hospital." That would clearly be a very different case than the one with which we are presented, and by our opinion today we do not imply that a defendant who fails to appear at his sentencing hearing because he is incapacitated should be bound by an agreement to appear. But we must decide *this* case, and appellant's self-professed reason for failing to appear for sentencing was that, over the course of the week during which he was released, he forgot the date of his sentencing hearing. "I forgot" is not an excuse for failure to appear at a sentencing hearing that would negate the agreed-on consequence for failure to appear. On the facts of this case, we find no deprivation of appellant's right to due process.

## II.

■ Appellant contends that the district court abused its discretion by refusing to allow him to move to withdraw his guilty plea pursuant to Rule 15.05, subdivision 1 of the Minnesota Rules of Criminal Procedure. After imposition of the sentence, this subdivision allows a defendant to move and requires a district court to permit him to withdraw his guilty plea if "withdrawal is necessary to correct a manifest injustice." Minn. R.Crim. P. 15.05, subd. 1. Manifest injustice exists when a guilty plea is invalid. *State v. Theis,* 742 N.W.2d 643, 646 (Minn.2007). A plea is invalid if it is not accurate, voluntary, and intelligent. *State v. Byron,* 683 N.W.2d 317, 322 (Minn.App.2004), *review denied* (Minn. Sept. 29, 2004).

After the district court imposed the guidelines sentence pursuant to appellant's negotiated plea to first-degree assault, appellant asked, "Can I put a motion to take my deal back?" The district court replied, "No." Appellant was represented by counsel at the time, and neither counsel nor appellant objected. Appellant now contends, without citation to any authority, that the district court "affirmatively misled [him] by essentially telling him that he could not seek plea withdrawal" and "precluded [him] from any opportunity to argue in support of the request." We disagree. The better interpretation of this

interaction is that appellant moved for plea withdrawal, which the district court denied because it found no manifest injustice. This is especially true since appellant was represented by an attorney at this hearing; defense counsel was surely aware of appellant's right to move for withdrawal of his plea "[a]t any time" to correct a manifest injustice. *See* Minn. R.Crim. P. 15.05, subd. 1.

There is no explicit or implicit contention in this appeal that appellant's plea was not accurate. Arguably, the plea's intelligence and voluntariness are implicitly called into question by appellant's arguments at the sentencing hearing, which were all variants of the theme that he forgot the date of the June 10 hearing and did not wish to receive a 161–month sentence instead of a 60–month sentence. A guilty plea is involuntary when it rests "in any significant degree" on an unfulfilled or unfulfillable promise, "including a promise of a sentence unauthorized by law." *James v. State,* 699 N.W.2d 723, 728–29 (Minn.2005) (quotations omitted). "Allowing the government to breach a promise that induced a guilty plea violates due process." *Id.* at 728 (quotation omitted).

An intelligent plea is one that is "knowingly and understandingly made." *Perkins v. State,* 559 N.W.2d 678, 688 (Minn.1997). "To be intelligently made, a guilty plea must be entered after a defendant has been informed of and understands the charges and direct consequences of a plea." *Byron,* 683 N.W.2d at 322. The intelligence requirement is meant to ensure "that the defendant understands the charges, his or her rights under the law, and the consequences of pleading guilty." *Alanis v. State,* 583 N.W.2d 573, 577 (Minn.1998).

Although the determination of what the parties agreed to in a plea bargain is a factual inquiry for the district court, *State v. Rhodes,* 675 N.W.2d 323, 326 (Minn.2004), "the interpretation and enforcement of plea agreements present legal issues that we review de novo," *James,* 699 N.W.2d at 728. We review the district court's decision to deny the withdrawal of a guilty plea for an abuse of discretion. *Barragan v. State,* 583 N.W.2d 571, 572 (Minn.1998).

It is clear from the record that appellant understood the direct consequences of his plea, including the fact that a reduced sentence was contingent upon his appearance for sentencing on June 10. Because the presumptive guidelines sentence was expressly contemplated by the plea, and the parties agreed that this sentence would be imposed if appellant failed to appear, appellant received precisely what he bargained for. Consequently, appellant's plea was both voluntary and intelligent. We find no indication in the record that appellant's plea was invalid or that its enforcement created a manifest injustice.

We also observe that this court has consistently refused to allow defendants to withdraw these types of conditional guilty pleas merely because the defendant received the longer sentence contemplated by the plea after the condition attached to receiving the shorter sentence was not met. We hold that the district court did not abuse its discretion by denying appellant's request to withdraw his guilty plea.

## DECISION

This case involves a conditional plea agreement that contemplated two sentences, the longer of which would be imposed if appellant failed to appear at his scheduled sentencing hearing. Appellant failed to appear, but later explained that

he lost track of the date. We hold that the district court did not err in imposing the longer sentence without making a specific determination that failure to appear was intentional and inexcusable. We also hold that the district court did not abuse its discretion in denying appellant's motion to withdraw his valid guilty plea after imposition of the longer sentence in accordance with the terms of his plea bargain.

**Affirmed.**