*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1388**

Robyn Lynn Hager, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed March 30, 2015
Affirmed
Reilly, Judge**

Steele County District Court
File No. 74-CR-10-1584

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Owatonna, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges the denial of his postconviction petition requesting permission to withdraw his guilty plea to first-degree driving while impaired (DWI). He argues that the district court erred by holding that his plea was voluntary and accurate.

Because the district court did not abuse its discretion by denying the petition for postconviction relief, we affirm.

## FACTS

Appellant Robyn Lynn Hager was charged with first-degree DWI and misdemeanor reckless driving following a traffic incident that led to his arrest and a search of his vehicle. The search revealed a tube with burnt wire meshing over one end, which law enforcement believed was "a smoking device for controlled substances, usually crack cocaine." The device tested positive for the presence of a metabolite of cocaine. Hager submitted to a urine test following his arrest, and the test showed the presence of hydrocodone and a metabolite of cocaine.

Hager accepted the state's offer to plead guilty to first-degree DWI and a pending charge in another file in exchange for the dismissal of the charge of reckless driving and several other pending charges. The plea agreement provided that the state "would be free to argue sentencing [for the DWI offense], but recommend no more than 62 months," which was the bottom-of-the-box presumptive commitment duration under the Minnesota Sentencing Guidelines for a person with Hager's criminal-history score. Hager signed a plea petition affirming that, except for this agreement, "[n]o one—including my attorney, any police officer, prosecutor, judge, or any other person—has made any promises to me . . . in order to obtain a plea of guilty from me."

At the plea hearing, Hager confirmed that "[o]ther than the plea agreement stated on the record here today, [nobody has] made any threats to [me] or promises to coerce

2

[me] into entering into a plea of guilty." He pleaded guilty to first-degree DWI, and the

district court began to inquire as to the factual basis for the plea as follows:

> COURT: And on or about March 25th, 2010, in Steele County, were you driving a motor vehicle?
> HAGER: I was, Your Honor.
> COURT: And prior to driving that vehicle, had you been consuming alcohol?
> HAGER: No, Your Honor.
> COURT: Or using controlled substances?
> HAGER: Yes.
> COURT: And what type of controlled substances?
> HAGER: All of those ones that I previously mentioned there: Vicodin, amoxicillin, Adderall, metoprolol, hydrochloro-thiazide. I think there either is called an Advair disk or something.
> COURT: And these were all prescription medications?
> HAGER: Yes, Your Honor.
> COURT: Being used in the manner prescribed by the physician?
> HAGER: Yes, Your Honor.
> . . . .
> COURT: Were you also using cocaine at the same time?
> HAGER: Not to my knowledge, Your Honor.

Defense counsel then questioned Hager:

> COUNSEL: Mr. Hager, you would agree that you were given a test after the driving conduct in question; is that correct?
> HAGER: Yes.
> COUNSEL: And you would agree that that test came back positive for metabolites of cocaine; is that correct?
> HAGER: Yes.
> COUNSEL: And you would also agree that when you were stopped, there was a pipe found within the car; is that correct?
> HAGER: Yes.
> COUNSEL: And you would agree that based on the review of the file, that that came back as a positive for cocaine; is that correct?
> HAGER: I was not aware of that, but I would assume yes.
> . . . .

COUNSEL: Well, you understand that there would be people that would come in and testify [at trial] about your driving behavior that evening; is that correct?

HAGER: Correct, Your Honor.

COUNSEL: And you would also agree that those people would say that you were driving erratically; is that correct?

HAGER: Correct.

The prosecutor further questioned Hager:

PROSECUTOR: Mr. Hager, you know that the result of the urine test that was taken showed cocaine and hydrocodone in your system; correct?

HAGER: Correct.

PROSECUTOR: And you don't have any basis to dispute the presence of those substances in your system?

HAGER: Not that I can believe everything you read on the internet, but what I had read was that the amoxicillin, alone, will show a false positive for cocaine, which is all prescribed stuff, so that's my only concern.

PROSECUTOR: Okay. You acknowledge, though, that the test showed the presence of cocaine?

HAGER: The test did, yes.

PROSECUTOR: Okay. And if you plead guilty, you're waiving any affirmative defense you could raise regarding the interaction of some other drug; correct?

HAGER: Correct.

The district court accepted the plea to first-degree DWI and scheduled a sentencing hearing.

Hager later requested a continuance of sentencing to allow him to undergo back surgery. Defense counsel told the district court:

Mr. Hager knows he's going to have to serve some prison time, but he'd like to be healthy prior to going into prison. . . . I don't think that the Department of Corrections is going to pay for this kind of operation and to have him transported. . . .
. . . I think just humanitarily it might be nice for Mr. Hager to go and get his surgery done prior to having to do some time.

4

Hager also addressed the district court, stating that he had a painful back injury and that he would "prefer to just get this dealt with before I do go serve my time. . . . I do know how the system runs, and the DOC, and you have to [write] a kite just to see the doctor and take quite a few steps to get any relief." The district court granted the request for a continuance.

At the rescheduled sentencing hearing, Hager again requested a continuance to permit him to complete physical therapy and attend medical appointments before being taken into custody. After the district court denied that request, the state recommended a sentence of a 62-month commitment, and defense counsel stated that "there was an agreement in terms of the sentence and we'd ask the Court to follow the plea agreement." The district court sentenced Hager to serve 62 months for first-degree DWI.

After sentencing, Hager filed a petition for postconviction relief, requesting permission to withdraw his guilty plea. He argued that his plea was involuntary because it was induced by defense counsel's unfulfilled promise to him that counsel would argue for a dispositional sentencing departure of probation and chemical-dependency treatment. Hager maintained that he would not have pleaded guilty "if [he] had known that [he] would not have the opportunity to be placed on probation and entered into a treatment program." Hager also argued that his plea was inaccurate because the factual basis for the plea was established through the use of leading questions and failed to show that he drove after using a nonprescribed controlled substance. The district court held an

evidentiary hearing and then denied postconviction relief, determining that Hager's plea was both voluntary and accurate. This appeal follows.

## DECISION

A denial of postconviction relief is reviewed to determine whether the district court abused its discretion by making a decision that "is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (quotation omitted). Factual determinations are reviewed under a clearly erroneous standard and will not be reversed unless they are not factually supported by the record, but legal conclusions are reviewed de novo. *Id.* But an assessment of the validity of a guilty plea presents a question of law. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be valid, a plea must be accurate, voluntary, and intelligent. *Id.*

## I. The district court did not err by determining that Hager's guilty plea was voluntary.

Hager argues that his guilty plea was involuntary because it was induced by a promise by defense counsel that was never fulfilled. He contends that defense counsel promised to argue for a dispositional sentencing departure and that he would not have pleaded guilty had he known the argument would not be made and he would not have a meaningful opportunity to be put on probation. The district court found that Hager's claim that defense counsel made such a promise was not credible or supported by the record, and the district court concluded that Hager's plea was voluntary.

6

The requirement that a plea be voluntary "insures that a guilty plea is not entered because of any improper pressures or inducements." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quotation omitted). "A guilty plea is involuntary when it rests 'in any significant degree' on an unfulfilled or unfulfillable promise . . . ." *State v. Batchelor*, 786 N.W.2d 319, 324 (Minn. App. 2010) (quoting *James v. State*, 699 N.W.2d 723, 728 (Minn. 2005) (quotation omitted)), *review denied* (Minn. Oct. 19, 2010). "To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement." *Raleigh*, 778 N.W.2d at 96; *see also James*, 699 N.W.2d at 728 (stating that determining what the terms of a plea agreement are is a factual inquiry to be resolved by the postconviction court).

We agree with the district court that Hager's contention that his plea was induced by defense counsel's promise to argue for a dispositional departure is not supported by the record. Hager agreed to plead guilty to first-degree DWI in exchange for the dismissal of the reckless-driving charge and other pending charges and the state's recommendation of a sentence of no more than 62 months. The plea petition specifically stated that, except for this agreement, "[n]o one—including my attorney, any police officer, prosecutor, judge, or any other person—has made any promises to me . . . in order to obtain a plea of guilty from me." Hager confirmed during the plea hearing that "[o]ther than the plea agreement stated on the record here today, [nobody has] made any threats to [me] or promises to coerce [me] into entering into a plea of guilty." A possibility of a dispositional departure or probation was not mentioned in the plea petition or during the plea hearing.

Moreover, when requesting a continuance of the sentencing hearing, defense counsel told the district court that Hager "knows he's going to have to serve some prison time." Hager requested a continuance of sentencing to allow him to undergo back surgery before being sent to prison because he believed that he would not get appropriate medical treatment while in prison, and he wanted to be healthy before entering prison. Hager later requested another continuance to permit him to complete physical therapy and attend medical appointments before being taken into custody. Hager's statements and requests contradict his claim that defense counsel promised to argue for a sentence of probation rather than prison time and that he believed he had an opportunity to obtain a dispositional departure. *Cf. State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983) (stating that the defendant's assertion that defense counsel promised him probation was negated by the record and that "[c]learly, therefore, the trial court was justified in finding that no such promise had been made).

Hager maintains that his position is supported by the affidavit that he filed with the postconviction petition. In the affidavit, he asserted that "[b]efore my plea was entered, my attorney . . . informed me that he would request that the court place me on probation and allow me to enter treatment." He further asserted that "I carefully considered the risks of taking my case to trial, and my decision to take the plea was based primarily on my belief that I had a meaningful chance to be placed on probation and to be entered into treatment." Attached to Hager's affidavit were six letters addressing his medical conditions and treatment, education, background, personality, and the fact that he completed a chemical-use assessment. He claimed in his affidavit that these letters were

8

provided to defense counsel before sentencing to support a request for a dispositional departure.

At the evidentiary hearing, Hager relied only on his postconviction documents to support his position; he did not call his former defense counsel to testify or provide an affidavit from his former defense counsel. Given the information in the record, the district court found that the assertions made in Hager's affidavit were unsupported, unpersuasive, and not credible. *See* Minn. Stat. § 590.04, subd. 3 (2014) (stating that a petitioner for postconviction relief bears the burden of proving the facts alleged in the petition "by a fair preponderance of the evidence"); *Sanchez-Diaz v. State*, 758 N.W.2d 843, 846 (Minn. 2008) (stating that allegations made in a postconviction petition "must be more than argumentative assertions without factual support"). We give "considerable deference" to a postconviction court's credibility determinations. *McDonough v. State*, 827 N.W.2d 423, 426 (Minn. 2013) (quotation omitted). The district court did not clearly err by finding that Hager was not induced to plead guilty by an unfulfilled promise by defense counsel and did not err by holding that Hager's plea was voluntary.

## II. The district court did not err by holding that Hager's guilty plea was accurate.

Hager contends that his plea was inaccurate because the factual basis for the plea did not establish that he drove with a nonprescribed schedule I or II controlled substance in his body and because the factual basis was established through the use of leading questions. The district court determined that a proper factual basis was established and that the use of leading questions did not render Hager's plea inaccurate.

9

The requirement that a plea be accurate "protects a defendant from pleading guilty to a more serious offense than that for which he could be convicted if he insisted on his right to trial." *Raleigh*, 778 N.W.2d at 94. A plea must be supported by a proper factual basis to be accurate. *Id.* "The factual basis must establish sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Munger v. State*, 749 N.W.2d 335, 338 (Minn. 2008) (quotation omitted).

Hager pleaded guilty to first-degree DWI for driving, operating, or being in physical control of a motor vehicle when his "body contain[ed] any amount of a controlled substance listed in schedule I or II, or its metabolite, other than marijuana or tetrahydrocannabinols." Minn. Stat. § 169A.20, subd. 1(7) (2008). Hager's urine test showed the presence of hydrocodone and a metabolite of cocaine. Cocaine is a schedule II controlled substance. Minn. Stat. § 152.02, subd. 3(1)(d) (2008).[1]

During the plea hearing, Hager admitted that the urine test showed the presence of a metabolite of cocaine in his body. He also acknowledged that the tube with burnt wire meshing discovered in his vehicle tested positive for the presence of a metabolite of cocaine. While he mentioned that he had read that his prescribed amoxicillin could show a false positive for cocaine, he agreed that he was pleading guilty and was waiving any

---

[1] Hydrocodone is also a schedule II controlled substance, Minn. Stat. § 152.02, subd. 3(1)(a) (2008), but Hager claimed that he was using Vicodin according to the terms of a valid prescription, which provided an affirmative defense to driving with hydrocodone in his body. *See* Minn. Stat. § 169A.46, subd. 2 (2008) ("If proven by a preponderance of the evidence, it is an affirmative defense to a violation of section 169A.20 subdivision 1, clause (7) . . . that the defendant used the controlled substance according to the terms of a prescription issued for the defendant . . . .").

defense that the urine test's results were caused by another drug. We conclude that the plea colloquy established sufficient facts to support a conclusion that Hager drove a motor vehicle with cocaine or a metabolite of cocaine in his body.[2]

Hager also contends that his plea was inaccurate because the factual basis was established through the use of leading questions followed by his one-word responses. The supreme court has expressed a preference for the development of factual bases through defendants' own words and has criticized the use of leading questions to which defendants provide only "yes" or "no" responses. *See, e.g.*, *Lussier v. State*, 821 N.W.2d 581, 589 (Minn. 2012) ("We have previously observed that the typical way a district court satisfies the accuracy requirement is by asking the defendant to express in his own words what happened. And we have cautioned against the use of exclusively leading questions to establish a proper factual basis for a guilty plea." (alteration, quotations, and citation omitted)); *State v. Ecker*, 524 N.W.2d 712, 717 (Minn. 1994) ("[W]e again discourage the use of leading questions to establish a factual basis."). But guilty pleas have not been deemed inaccurate solely because the factual bases were established through the use of leading questions. *See, e.g.*, *Raleigh*, 778 N.W.2d at 95-96; *Ecker*, 524 N.W.2d at 717; *Barnslater v. State*, 805 N.W.2d 910, 914 (Minn. App. 2011) ("The use of leading questions is therefore disfavored, but it does not by itself invalidate a guilty plea."). The district court did not err by holding that Hager's guilty plea was accurate

---

[2] Because we conclude that the factual basis was sufficient to support the guilty plea, we need not reach Hager's alternative argument that the plea was not accurate even if it is construed as an *Alford* plea.

11

and supported by a proper factual basis and did not abuse its discretion by denying the petition for postconviction relief.

**Affirmed.**